425 So.2d 955 (1983)
Harold LYONS
v.
PARISH OF JEFFERSON, General Electric Company and XYZ Company.
No. 5-116.
Court of Appeal of Louisiana, Fifth Circuit.
January 10, 1983.
Rehearing Denied February 17, 1983.
Writ Denied April 5, 1983.
*957 T. Peter Breslin, Kenner, for plaintiff-appellee.
Gerard M. Dillon, New Orleans, for defendants-appellants.
Before SAMUEL, BOUTALL, KLIEBERT, CURRAULT and GRISBAUM, JJ.
GRISBAUM, Judge.
Defendant, Parish of Jefferson, suspensively appeals from a judgment holding it liable to the plaintiff, Harold Lyons, for damages of $25,000 for injuries sustained by Lyons when an electrical panel box located in an office building owned by the Parish exploded burning plaintiff. Defendant contends the trial court erred in finding the Parish had custody of the panel box at the time of the accident and finding that the panel box was inherently unsafe or defective and also in failing to find the accident occurred due to victim fault or fault of a third person. We affirm.
This case presents questions of whether the Parish is liable for the injuries sustained by plaintiff under La.C.C. art. 2322 and La.C.C. art. 2317.
FACTS
On November 17, 1976 while plaintiff was working for A.G. Siegel Electrical Contractors at an office building owned by the Parish of Jefferson, an electrical panel box installed by an unknown company and manufactured by General Electric Company exploded resulting in injuries to the plaintiff. The Parish had acquired this multi-story office building in May 1975. It contracted with R.A. McGuire Construction Corporation to alter and/or construct offices in the interior of the building in accordance with the Parish's architect's plans and specifications. This general contractor subcontracted the electrical work to A.G. Siegel Electrical Contractors, plaintiff's employer.
The building had four floors with the first three floors occupied and part of the fourth also occupied. At the time of the accident plaintiff was working on the fourth floor where a new office was being constructed by adding new walls. Additional outlets were being installed as well as lights removed or added. Plaintiff had worked approximately four or five months on the fourth floor with this particular electrical panel board which had previously been installed by another firm. He was the only electrician who had worked on the electrical panel board for some three or four weeks prior to the accident.
This particular board was a three phase panel containing three bus bars; one located on the left side, one on the right side, and one in the center. The bus bars were energized by electrical wires connected to the bottom of the bus bars through the bottom of the panel box. Circuit breakers for individual circuits were installed in the panel box as needed. When plaintiff first began work on the panel, the top half portion of the panel had circuit breakers. Plaintiff testified that he installed one circuit breaker in the middle right half of the panel box. The panel box was mounted on a wall with the top of the box reaching a point approximately six feet from the floor. The top of the panel box was "energized" at the time of the accident. Plaintiff as well as his employer, A.G. Siegel, testified that it was not unusual to not de-energize a panel while stuffing wires on the outside. Moreover, Siegel testified he had previously asked permission to turn off the power, but the Parish responded that the power had to be on at all times.
On the day of the accident, plaintiff testified he was working above and to the left of the electrical panel box approximately six inches from the box on level with the top of the panel tucking wires in order that *958 the panel cover would close. He testified that he was not working inside the box. Plaintiff testified there were approximately three wires with the ends probably stripped of insulation which were not as yet attached to the terminals on the circuit breakers. According to plaintiff, these wires were hanging down below the box when the accident occurred.
Plaintiff's expert, Mr. Robert Drake, a professor of electrical engineering at Tulane University with a PhD in electrical engineering, testified that the accident was the result of a probable three-phase fault in the upper end of the bus bars; i.e., a three-phase short circuit across the upper end of the bus bars which indicated that there was a short from the center bus bar to each of the other two. He also observed a small degree of burning on the bus bar at the lower end of the panel. He noted that there was an indication of arcing between the left bus bar and the center bus bar. He concluded from the above observations that cause of the accident was that the circuit breakers had been misapplied. He explained that this meant that the circuit breakers were incapable of interrupting a short circuit surge of current. The circuit breaker attempts to interrupt the current but must be applied in a location where the power system capacity is less than the interrupt capacity. Therefore, if the current flow is significantly greater than the capacity of the breaker to interrupt the current flow then there is a possibility of breaker failure. In his opinion there was a breaker failure causing the explosion which injured plaintiff. He further stated "[i]t is not unusual to find a short circuit current well in excess of the capabilities of the breaker." He did not know the capacity of the breakers which failed because they were destroyed by the explosion; however, the remaining unaffected circuit breakers had a capacity of 14,000 amperes. Although possible, he considered it highly improbable that the short circuit was caused by Lyons' moving of wires in the panel box because the bus bars were insulated and due to the close space between the bars making it quite difficult to get a wire in a position to cause a short circuit. Defendants introduced no expert testimony as to the cause of the accident nor did they have any other witnesses testify.
LIABILITY OF THE PARISH OF JEFFERSON
This case presents questions of the applicability of La.C.C. arts. 2322 and 2317. La.C.C. art. 2322 states:
"The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."
This article makes the owner of a building answerable in damages to any person who is injuredwhile rightfully inside or outside the buildingin an accident caused by the owner's neglect to repair the building or from a vice (defect) in its original construction. Fonseca v. Marlin Marine Corp., 410 So.2d 674, 679 (La.1981); Olsen v. Shell Oil Co., 365 So.2d 1285, 1288 (La.1978). The plaintiff must prove that his injury was caused by the "ruin of a building owned by the defendant, and that the ruin was attributable to a vice in the building's original construction or to a failure to repair it." Fonseca, supra. "Ruin" has been construed to permit recovery for injuries caused by defects in parts or appurtenances to structures. Olsen, 365 So.2d 1285, 1929-93; See, Fonseca, supra.
La.C.C. art. 2317 provides:
"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody...."
The plaintiff must prove under art. 2317 that he was injured by a defective thing which was in the care or custody of the defendant. Kent v. Gulf States Utility Co., 418 So.2d 493, 497 (La.1982); Fonseca, supra; Jones v. City of Baton Rouge, 388 So.2d 737, 739 (La.1980); Loescher v. Parr, 324 So.2d 441, 446-47 (La.1975). Moreover, Jones indicated that municipalities and other public bodies are liable for damages *959 caused by things in their custody under C.C. art. 2317. Jones, 388 So.2d 737, 740.
Under both articles 2322 and 2317 liability is based on the statusownership or custodyrather than on personal fault. The owner or custodian cannot escape liability by claiming that he was ignorant of the defect or that the defect was difficult to discover. He is absolved of liability only if he can prove that the harm was caused by the fault of the victim, the fault of the third person, or by irresistable force. Fonseca, supra; Olsen, supra; Loescher, supra.
We find that the plaintiff has satisfied the elements of both articles 2322 and 2317. Under art. 2322, it is undisputed that the Parish of Jefferson is the owner of this building. While defendant contends that the building in question is "under construction", and, therefore, art. 2322 would not apply under Temple v. General Insurance Co. of America, 306 So.2d 915, 917 (La.App. 1st Cir.1974), we do not agree with this contention. The structure was a fully-occupied building with a portion of a floor being specially fitted for certain offices. The Parish is liable to plaintiff in its capacity as "custodian" of the electrical panel box under art. 2317. Fonseca recognized that in most cases the custodian is the owner of the thing because he is the person who has actual control or responsibility for the thing. Fonseca, 410 So.2d 674, 679. Referring to art. 2317, Washington v. T. Smith & Son, 68 So.2d 337, 346 (La.App.Orl.1953) states "[t]he article means by things in one's custody such things over which that person maintains supervision and control..." (Emphasis added.) See, Smith v. Chemical Const. Corp., 215 So.2d 530, 531 (La.App. 1st Cir.1968); Wilcox v. American Oil Co., 215 So.2d 402, 403-4 (La.App. 2d Cir.1968). The Parish maintains supervision and control of the electrical panel box as evidenced by its refusal to allow the electricity to be cut off while plaintiff was working on the box thereby enhancing the risk of harm. We also find that the exploding electrical box is analagous to the exploding water heater in Olsen and therefore constitutes "ruin" of a building for purposes of art. 2322 liability.
Concerning the element of causation, we find that plaintiff has satisfied his burden of proving a "vice" in the electrical panel box under both arts. 2322 and 2317. Judgment in law suits is not based on scientific certainty but rather it is based on a preponderance of the evidence. Houston-New Orleans, Inc. v. Page Engineering Co., 353 F.Supp. 890, 894 (E.D.La.1972). In explaining the plaintiff's burden of proving causation by a preponderance of the evidence, the Supreme Court in Townsend v. State Department of Highways stated:
"It is only necessary that the evidence show that it is more probable than not that the harm was caused by the tortious conduct of the defendant.... This burden of proof may be satisfied by direct or circumstantial evidence.... It suffices if the circumstantial evidence excludes other reasonable hypotheses only with a fair amount of certainty so that it is more probable than not that the harm was caused by the tortious conduct of the defendant ...." (Citations omitted and emphasis added.) Townsend, 322 So.2d 139, 141-42 (La.1975).
While, as Broussard v. Penn. Millers Mut. Ins. Co., 406 So.2d 574, 576 (La.1981) noted, a defect may not be presumed by the mere occurrence of an accident, there are cases where a defect is the only reasonable explanation for the occurrence of the injury or where there is evidence offered that tends to make improbable some other cause. Moreover, proof of a specific defect which caused the accident is not required. See, Hunt v. Ford Motor Co., 341 So.2d 614, 618 (La.App. 2d Cir.1977); Madden v. Louisiana Power & Light Co., 334 So.2d 249, 253 (La. App. 4th Cir.1976); Franks v. National Dairy Products Corp., 414 F.2d 682, 687 (5th Cir.1969); Houston-New Orleans, Inc., 353 F.Supp. 890, 894-95. In the present case where an explosion has destroyed important evidence which might indicate the precise nature of the occurrence, inferences of defectiveness are permissible but not compelling. See, Franks v. National Dairy Products *960 Corp., 414 F.2d 682, 685; Houston-New Orleans, Inc., 353 F.Supp. 890, 895. The finder of fact may choose to draw them or refuse to draw them depending on the evaluation and weight accorded to competing and sometimes conflicting circumstances. Lindsay v. McDonnell Douglas Aircraft Corp., 460 F.2d 631, 640 (8th Cir.1972).
In this case, the trial court chose to accept the findings of the plaintiff's expert who concluded that the explosion was the result of circuit breakers being misapplied. Plaintiff's fault was eliminated by plaintiff's testimony that he installed one circuit breaker but not in the section of the panel that exploded and that he was not working inside the box. Moreover, plaintiff's expert negated the probability that somehow plaintiff had touched with the wire some part in the interior of the electrical panel box causing the explosion. Defendant presented no evidence of other possible causes by expert testimony or otherwise. We find that plaintiff has carried his burden of proving by a preponderance of the evidence that there was a defect in the electrical panel box which caused the explosion. The defendant, on the other hand, has not come forth with evidence showing that the explosion was caused by victim fault, fault of a third person, or irresistable force. Fonseca, 410 So.2d 674, 679; Olsen, 365 So.2d 1285, 1293-94. Finding plaintiff to be a credible and convincing witness, the trial court held that the accident was not caused by plaintiff's actions but was the result of the equipment being inherently unsafe. From our analysis of the evidence adduced at trial, we cannot find that the trial judge was clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La. 1978).
For the reasons discussed above the judgment of the trial court is affirmed.
AFFIRMED.
SAMUEL and KLIEBERT, JJ., dissent.
KLIEBERT, Judge, dissenting.
For the plaintiff to recover, he must prove by a preponderance of the evidence that (1) the Parish had custody of the panel box, (2) the panel box contained a vice or defect, and (3) the vice or defect was the cause of the plaintiff's injury.
The majority opinion concluded the parish maintained supervision and control of the electrical panel box and was evidenced by its refusal to allow the electricity to be cut off while the plaintiff was working on the box. In my opinion, the record does not support that conclusion.
The absolute physical control of the panel box was held by the plaintiff and his employer. Prior to the accident, the plaintiff's employer had installed circuit breakers in the box, at least one of which had been installed by the plaintiff. For three weeks prior to the accident, plaintiff was the only electrician who worked on the box. He had left the cover off of the box but had the key to the closet in which the panel box was located. When the accident occurred, the plaintiff was actively working on the box with the intention of installing another circuit breaker. In my view, "custody" within the meaning of La.C.C. Article 2317 was in the plaintiff and his employer rather than in the Parish.
The plaintiff sought to prove the panel box had a vice and that the vice caused the plaintiff's injury through the expert testimony of Dr. Robert Drake. As we understand Dr. Drake's testimony, he was of the opinion that when a short circuit occurred, a previously installed circuit breaker failed, causing the electrical flashes which burned Lyons. He based his opinion on information he obtained from the power company as to the "short circuit current" and his belief this current was greater than the capacity of the circuit breaker to interrupt the current. However, neither the possible "short circuit current" which he obtained from the power company[1] nor the capacity *961 of the circuit breakers[2] which he believed failed are in the record. Thus, his opinion as to probable cause is unsupported by the facts in the record. The expert's bare opinion is not sufficient to prove the case by a preponderance of the evidence. Prejean v. Trinity Universal Insurance Company, 210 So.2d 395 (La.App. 3rd Cir.1968). One could speculate just as easily that the short circuit was caused by something the plaintiff did as the expert concluded that once the short circuit occurred there was a failure of the circuit breaker and that was the cause of plaintiff's injury.
For the reasons above stated, therefore, I dissent from the majority opinion.
SAMUEL, Judge, dissenting.
I agree with the reasons expressed in the dissenting opinion of Judge Kliebert. In my view neither Civil Code Article 2317 nor Civil Code Article 2322 is applicable here. And it should be emphasized that the opinion of the plaintiff's expert witness relative to vice or defect is not valid because it is based on facts not substantiated by the record.
In practically all cases the majority's reasons and conclusion would require a holding of liability on the part of any individual home owner who calls in an electrician to repair an electrical unit in his residence when there is an explosion or malfunction in the unit being worked on and the electrician is injured. Strict liability or its equivalent should be confined to circumstances clearly within the contemplation of the two codal articles.
Accordingly, I respectfully dissent.
NOTES
[1] The trial judge maintained an objection to the hearsay when Dr. Drake attempted to testify as to the short circuit current.
[2] The majority opinion takes the position this was not obtainable because the circuit breakers were destroyed in the accident. However, we note that the particular circuit breakers which were installed could have been determined from the previous contractor who had installed them.