518 So.2d 1070 (1987)
Charles H. BOWLES and Scherll Hotard Bowles
v.
LITTON INDUSTRIES, INC., MONROE SYSTEMS FOR BUSINESS DIVISION, Walter C. Blessey, Jr. & Associates and Travelers Insurance Company.
No. 87-CA-315.
Court of Appeal of Louisiana, Fifth Circuit.
November 9, 1987.
Rehearing Denied February 17, 1988.
*1073 Joseph E. Windmeyer, New Orleans, for Charles H. Bowles and Scherll Hotard Bowles.
Thomas L. Gaudry, Jr., Gerald J. Nielsen, Windhorst, Pastorek & Gaudry, Gretna, for Walter E. Blessey, Jr. & Associates and Zurich Ins. Co.
Henry Leon Sarpy, Evan Marr Fogelman, Porteous, Hainkel, Johnson & Sarpy, New Orleans, for Brackley & Voelkel Const., Inc. and U.S. Fidelity and Guar. Co.
Before KLIEBERT, GAUDIN and DUFRESNE, JJ.
KLIEBERT, Judge.
This action in tort was brought by Charles H. Bowles (a Jefferson Parish Police Officer) for personal injuries allegedly sustained during the course of a burglary investigation when he fell from a ladder which had been fabricated by Brackley & Voelkel Construction Company (contractor) and incorporated into the interior structure of a warehouse owned by Walter E. Blessey, Jr. & Associates (owner) and leased to Monroe Systems for Business Division of Litton Industries (lessor). Plaintiffs sought recovery against the contractor, the owner, and the lessor of the building and their respective liability insurers on recovery theories of strict liability and/or negligence. The jury answered interrogatories stating the ladder was not defective and Bowles was the sole proximate cause of his injuries. Accordingly, a judgment was rendered dismissing plaintiff's claims.
Bowles appealed and on the appeal contends the contractor and the owner are strictly liable under LSA-C.C. arts. 2317 and 2322 for his damages because the ladder failed to meet minimum safety standards for fixed industrial ladders and urges a reversal of the judgment dismissing his claims against them. After the record was lodged in this court Bowles filed a motion to dismiss the lessor (Monroe) and its insurer as parties to this appeal. The motion was granted. For the reasons which follow we affirm the trial court judgment dismissing Bowles' claims against the contractor and the owner.

FACTS
In 1984 Charles H. Bowles was assigned to the canine division of the Jefferson Parish Sheriff's Office. On September 10, 1984, while searching a warehouse in Jefferson, La. for a burglar, his dog indicated someone may have climbed a fixed wooden ladder which led to a heating unit platform in the storeroom area. After shining his flashlight up the ladder to see where it led, Bowles put the flashlight in his rear pocket and began to ascend the ladder in the dark. His right foot slipped off a rung and he fell to the floor, landing on his back. Bowles initially believed he was not seriously hurt and after completing the search, without telling anyone he had fallen, returned home. For two days he treated himself with heating pads and hot baths. However, his condition steadily deteriorated, and on September 14, 1984 he sought medical attention.[1] Bowles ultimately underwent lumbar discectomy on two occasions and now has a twenty-five percent permanent disability with restrictions on lifting over thirty pounds, prolonged standing or sitting, and manual labor.
The ladder was fabricated by the contractor during the course of interior modifications, to allow a permanent means of access to an attic heating unit, as was required by the Jefferson Parish Mechanical *1074 Code and was located in that part of the building leased by Blessey to Monroe. The side rails of the ladder were two-by-fours which were notched to accept the one-by-four rungs. The ladder was bolted into position seven and three quarter inches from the wall above which the heating platform was located. Investigation subsequent to the accident revealed the rungs of the ladder were sixteen inches on center (from step to step) and the side rails were fifteen inches apart. ANSI standards promulgated by the American National Safety Institute and general industry regulation 29 CFR 1910.27(b)(ii) promulgated by the Occupational Safety and Health Administration suggest a rung spacing of no greater than twelve inches on center and a distance of sixteen inches between side rails. Bowles contends the failure to meet minimum safety standards is a defect in the ladder and therefore the contractor and the owner are strictly liable for his damages.
THE LIABILITY OF THE CONTRACTOR (VOELKEL) AND/OR THE OWNER (BLESSEY) UNDER LSA-C.C. ARTICLES 2317 AND 2322
In order to recover under Article 2317 the plaintiff must prove: (a) the thing which caused the damage was in the care (custody) of the defendant(s), (b) the existence of a defect or vice of the thing, and (c) that his damage resulted from this defect or vice. Landry v. State, 495 So.2d 1284 (La.1986); Loescher v. Parr, 324 So.2d 441 (La.1975). Additionally, to recover under Article 2322 the plaintiff must prove that his injury was caused by the "ruin" of the building and that the "ruin" was attributable to a vice in the building's original construction or to a failure to repair it.[2]Lyons v. Parish of Jefferson, 425 So.2d 955 (La.App. 5th Cir.1983) writ denied 430 So. 2d 97 (La.1983). Under both articles, once the custody is shown, the defect or ruin proven, and the defect or ruin shown to be the cause of the injury, the guardian or owner of the defective thing or the owner of the "ruined" building is absolved of liability only if he can prove the harm was caused by the fault of the victim, by the fault of a third party, or by an irresistible force. Landry, supra; Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1978).
Here, since the contractor is not the owner of the building, it is not answerable under Article 2322 for any damages occasioned by its ruin. However, "custody" of the ladder as contemplated by C.C. Article 2317 does not depend on ownership but rather involves the right of supervision, direction and control. Chandler v. Bunge Corp., 489 So.2d 275 (La.App. 4th Cir.1986) writ denied 492 So.2d 1219 (La. 1986); Myers v. Ford Motor Company, 486 So.2d 1030 (La.App. 2nd Cir.1986).
The contractor fabricated the ladder in 1983. The owner took possession of the premises and leased the portion in which the ladder was located to the lessee prior to plaintiff's injury. Therefore, the contractor did not have custody of the ladder at the time the accident took place and is not answerable to Bowles in strict liability under Article 2317.
We now turn to the issue of strict liability as it may apply to the owner.
The lease contained the following provision:
"Tenant shall take good care of the Premises and shall make all repairs necessitated by its misuse thereof. Landlord shall maintain and keep in repair (and will replace or put into repair where necessary) the walls, foundation and roof of the Building, the plumbing, heating, air conditioning and electrical system serving the Premises, other installations and areas serving more than one tenant of the Building and the Land, and will make all other repairs except those required to be made by Tenant. Tenant shall be responsible for all maintenance and minor repairs to the plumbing, heating, *1075 air conditioning and electrical systems to a limit of Two Hundred Fifty and 00/100 Dollars ($250.00) per event of repair to each system."
As we view it, the ladder is both an appurtenance to the walls and foundation of the building and an integral part of the heating system. Hence, under the terms of the lease the owner retained custody of the ladder as contemplated by Article 2317 in that he retained direction, supervision and control over it, and the owner is strictly liable for damages arising from any defects in the ladder. Our next inquiry is to whether the ladder was in fact defective.
Bowles contends that the failure of the ladder to conform to suggested construction safety standards constituted a vice or defect as contemplated by Articles 2317 and 2322. A "vice" or "defect" is defined as a condition of a thing which creates an unreasonable risk of injury to another. Loescher v. Parr, supra; Sumner v. Foremost Ins. Co., 417 So.2d 1327 (La.App. 3rd Cir.1982); Goudchaux v. State Farm Fire and Casualty, 407 So.2d 1317 (La.App. 3rd Cir.1981) writ denied 412 So.2d 1114 (La.1982). In both negligence and strict liability inquiries, the reasonableness of the risk of harm is determined by balancing the probability and magnitude of the risk against the utility of the thing. Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980); Carter v. Board of Supervisors of Louisiana State University, 459 So.2d 1263 (La.App. 1st Cir.1984) writ denied 462 So.2d 1248 (La.1985); Ponder v. Groendyke Transport, Inc., 454 So.2d 823 (La. App. 3rd Cir.1984) writ denied 457 So.2d 1195 and 457 So.2d 1198 (La.1984).
The ANSI standards represent precautionary measures adopted through the consensus of governmental agencies, industry concerns, labor representatives and insurance companies. Such standards, while not definitive in assessing liability, do provide guidelines for determining whether a condition presents an unreasonable risk of harm. See Smolinski v. Taulli, 276 So.2d 286 (La.1973); Winterrowd v. Travelers Indemnity Co., 452 So.2d 269 (La. App. 2nd Cir.1984) writ granted 457 So.2d 1185, writ denied 457 So.2d 1195 (La.1984). Not every irregularity in construction or design creates an unreasonable risk of injury. See Shipp v. City of Alexandria, 395 So.2d 727 (La.1981); Koppie v. Commercial Union Insurance Co., 478 So.2d 179 (La.App. 3rd Cir.1985) writ denied 479 So. 2d 922 (La.1985).
Here the ladder's intended use was as a fixed means of access to the heating unit platform. It was located in a storeroom and was not intended for daily use, for use by the general public, or for use in the dark. The manager of Monroe Systems testified he had never used the ladder and was unaware anyone had. A Monroe employee, Gregory Stevens, testified he climbed the ladder twice "to see what was up there," and during his three year employment had seen two other persons climb it, one of whom had one leg.
A.J. Scardino, a "safety engineer" called by plaintiff and accepted as an expert in that field,[3] testified the sixteen inch rung spacing and fifteen inch width rendered the ladder unfit for its intended use. According to Scardino the sixteen inch rung spacing necessitated a physical movement of thirty-two inches when transferring a foot from a lower to a higher rung, creating a situation where the foot does not align properly on the higher rung.
Raymond Vanderbrook, a mechanical engineer registered in Louisiana, Texas and Mississippi, was called by Monroe and accepted as an expert in the field of failure and engineering analysis and reconstruction. Vanderbrook, who had experience in design and construction of stairways and fixed ladders, examined the ladder prior to trial. He testified that he found the ladder to be strong and well constructed with no defects in material or workmanship. He *1076 found it to be fit for its intended purpose notwithstanding the sixteen inch rung spacing. Vanderbrook related that uniformity in spacing is more important than spacing between rungs in that uniform spacing facilitates the development of a constant climbing rhythm. Vanderbrook also stated it is "absolutely" unsafe to climb a ladder in the dark.
Dr. Dale Carver, a civil engineer with a master's degree in applied mechanics and a Ph.D. in theoretic applied mechanics, was called by Voelkel and accepted as an expert in fields of theoretic applied mechanics and forensic engineering. Dr. Carver, upon examination, also found the ladder to be firm and stable. He related that he climbed it with ease and nothing gave or broke. Dr. Carver testified that no ladder is absolutely safe and that eighty percent of all slip and fall ladder accidents are caused by human error. In Dr. Carver's opinion the spacing of the rungs played no part in Bowles' accident.
The jury interrogatories reflect that all twelve jurors agreed the ladder was not defective. Although the jurors did not specifically say so, they obviously accepted the testimony of the defendants' expert witnesses that the sixteen inch rung spacing did not present an unreasonable risk of injury. It is well established that where there is a conflict in testimony, reasonable evaluations of witness credibility by the finder of fact will not be disturbed on appeal, absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We find no such error here.
Moreover, even were we inclined to reverse the jury verdict and hold that the sixteen inch spacing is a defect in the ladder (which we specifically decline to do) we must further consider whether Bowles' damages (injuries) were occasioned through the defect.
Bowles was climbing the ladder in the dark while searching for a possibly armed suspect. He testified that his right foot slipped but was unable to provide any explanation as to what caused it to slip. Bowles did not relate the slip in any manner to the rung spacing by indicating he encountered difficulty in stepping from rung to rung despite the fact that he negotiated three to five rungs before falling. Although Bowles testified he was holding onto the side rails when his foot slipped, defendants' experts testified if such were the case he would have swung into the ladder rather than fallen away from the ladder. Dr. Carver's opinion as to the cause of the accident was as follows:
"Mr. Bowles was in an unfamiliar surrounding and in the dark and I think he was apprehensive and I think he was distracted and probable (sic) not consciously not paying a lot of attention to the ladder itself and I think as he put it in his own words, he simply slipped and fell."
Because the jury found the ladder was not defective, it was not required to make a finding as to whether the defect was a proximate cause of Bowles' injuries. However, when ruling on the negligence aspect of the case the jury found that Bowles was the one hundred percent proximate cause of his own injuries. Such a finding certainly indicates that the jury found no causal connexity between the condition of the ladder and Bowles' fall.
Bowles cites Turner v. Safeco Ins. Co. of America, 472 So.2d 43 (La.App. 1st Cir. 1985) for the proposition that he need not show the manner in which the "defective" ladder caused the fall. In Turner the jury returned a verdict in favor of a plaintiff who fell down a flight of stairs. In addressing the issue of causation the appellate court noted:
"... The defendant contends the plaintiff has not shown the exact step on the stairway which caused the fall to occur. Further, the defendant contends the manner in which the defective stairway as a whole caused the fall has not been shown. We deem such a precise showing is not required.
The case of Reynolds v. Texas & P. Ry. Co., 37 La.Ann. 694, 698 (1885) relates the long recognized principle, `... [W]here the [defect] of the defendant greatly multiplies the chances of accident to the plaintiff, and is of a character *1077 naturally leading to its occurrence, the mere possibility that it might have happened without the [defect] is not sufficient to break the chain of cause and effect between the [defect] and the injury. Courts, in such matters, consider the natural and ordinary course of events, and do not indulge in fanciful suppositions. The whole tendency of the evidence connects the accident with the [defect].' Accord, Vitanza v. Growth Realties, Inc., 91 A.D.2d 917, 457 N.Y.S.2d 544 (1983). See also W. Prosser, Torts, [3d ed.] § 41, p. 246; Carter v. City-Parish Government, etc., 423 So.2d 1080 (La.1982); Naquin v. Marquette Casualty Company, 244 La. 569, 153 So.2d 395 (1963).
In the instant case the stairway is clearly defective according to the testimony of an architect, Mr. W.J. Evans. Mr. Turner fell down the stairway. It is the natural consequence that this condition caused the fall, unless another cause can be proven." (Footnote Omitted)
We find Turner inapposite to the present case. Here the expert testimony accepted by the jury established that the sixteen inch rung spacing did not "greatly multiply" the chances of a fall. Further, the defective condition of the stairs in Turner was a variance in the height of the risers from seven to ten inches. The variance prevented a person from developing a consistent rhythm when climbing the steps. In the present case, expert testimony established that the distance between the rungs of the ladder was uniform. Finally, in the present case the jury specifically indicated that the fall was caused by Bowles' inattention to the ladder; thus, "another cause" for the fall was proven.
Although plaintiff urged a negligence theory of recovery in the trial court, he did not address this theory in brief to this court; hence, we have not addressed it.
For the foregoing reasons, we conclude that neither the contractor nor the owner are liable under La.C.C. arts. 2317 and/or 2322 for Bowles' injuries. Accordingly, the judgment of the trial court is affirmed in all respects at appellant's cost.
AFFIRMED.
NOTES
[1] One of the major issues at trial was whether Bowles was injured in a fall at the warehouse or while lifting a television set at home on September 12, 1984. He made various conflicting statements to treating physicians and on insurance claim forms as to the cause of his injuries. However, by a nine-to-three vote the jury found that Bowles was injured at the warehouse. The facts as related incorporate that finding.
[2] Although this opinion is predicated on other grounds, a strong argument could be made that no "ruin" existed in the present case as the ladder did not fall, collapse, explode or disintegrate; it remained solid at all times. See Mott v. Odeco, 577 F.2d 273 (5th Cir.1978); Davis v. Royal-Globe Ins. Co., 257 La. 523, 242 So.2d 839 (1971).
[3] Scardino, who was grandfathered into certification as a safety engineer in the State of California, does not hold an engineering degree. Louisiana does not recognize safety engineers as professional engineers and Scardino is not a registered engineer in this state. Scardino holds a Bachelor's degree in education, and he received both a Master's degree and a Ph.D. through correspondence courses at an unaccredited university.