DIXON, Chief Justice.
This suit for personal injuries arose when plaintiff was injured in an accident in which his United States Postal Service truck was struck by an eighteen wheeler truck owned by defendant, Cagle Supply, Inc. The jury awarded plaintiff $14,000 in damages. Plaintiff appealed, asserting that the award was too low, and the court of appeal affirmed.[1] We granted plaintiff’s application for review. 406 So.2d 607 (La. 1981).
Plaintiff is a mail carrier for the United States Postal Service in Morgan City, Louisiana. On January 18, 1978 he had parked his truck in the driveway of Harold & Andy’s Exxon Service Station in Morgan City. Joseph Faulk was preparing to deliver mail to the station when defendant Roland A. Authement, Jr. backed his truck into plaintiff’s vehicle. Authement was driving an eighteen wheeler truck owned by Cagle Supply, Inc.; he was within the course and scope of his employment at the time of the accident.[2]
Joseph Faulk continued with his duties for several hours after the accident. He began experiencing pain in his hip and shooting pains in his legs later in the day. Dr. Askew, plaintiff’s family physician, was consulted at the emergency room of a local hospital. The physician prescribed bed rest and pain medication for Mr. Faulk. When the pain did not subside, Dr. Askew referred plaintiff to Dr. Russo, an orthopedic surgeon.
*1022 Dr. Russo diagnosed plaintiff's problem as a lumbar strain and prescribed heat, pain medication and muscle relaxants. Plaintiff was placed on light duty at his job until mid-March. The pain continued, and Dr. Russo advised Faulk to stop working and remain in bed. Plaintiff was allowed to return to work at the end of March. Dr. Russo testified that Mr. Faulk was a cooperative patient with a positive attitude toward recovery, and that he was not feigning injury. Dr. Russo treated plaintiff through mid-December of 1978. At each examination he found muscle spasm and restricted motion in the lower back. Dr. Russo referred Faulk to Dr. Vogel, a neurosurgeon, who recommended physical therapy. Dr. Russo concurred with that recommendation, had plaintiff continue with therapy and use heat at home. Faulk related to Dr. Russo, during an October appointment, that he was having a hard time working because it required long hours of standing. Dr. Russo suggested to plaintiff that some type of disability retirement might be in order. On December 12, 1978 Dr. Russo placed plaintiff on a “no work” status in preparation for a myelogram that Dr. Vogel was to perform.
Dr. Russo did not see plaintiff again until June of 1979. Mr. Faulk had improved somewhat following surgery performed by Dr. Vogel. Dr. Russo discharged plaintiff to Dr. Vogel’s care. Dr. Russo stated he considered plaintiff to have 15% physical impairment. At trial, Dr. Russo testified that plaintiff had reached the “maximum medical benefit” by June of 1979. He explained that phrase in layman’s terms as meaning plaintiff “... was about as good as you’re going to get.” He based this opinion on the length of time that had passed since the accident and the inability of plaintiff to better his condition despite strict adherence to his physicians’ instructions.
Dr. Vogel treated plaintiff from June of 1978 through the time of trial. He diagnosed plaintiff’s injuries as chronic lumbar strain. Physical therapy was prescribed, but discontinued after a short time, and plaintiff was advised to use heat packs. Mr. Faulk was hospitalized in January of 1979, and he underwent a myelogram and a diskogram. Based on the results of these tests, Dr. Vogel performed a rhizotomy on plaintiff.[3] The rhizotomy was performed to deaden pain nerves in an attempt to relieve Faulk’s distress. Plaintiff remained hospitalized for three days, and was given permission to return to work in mid-April. He was to begin with only the lightest of work and then progress until he could tolerate lifting a weight of fifty pounds; the fifty pound restriction was to remain in effect until a year after surgery. During this period Mr. Faulk continued conservative care consisting of exercise, daily walks, moist heat and medication. Testimony of Faulk and his wife clearly established that plaintiff was diligent in following the doctor’s orders.
Dr. Vogel examined plaintiff in September, 1979 and determined that his condition had deteriorated since April. Plaintiff was experiencing pain, and the physician found muscle spasm, limitation of motion and scoliosis caused by the muscle spasm. When Dr. Vogel saw plaintiff in January, 1980— one year after the rhizotomy and two years after the accident — his pain had increased. Dr. Vogel performed another myelogram, diskogram and rhizotomy after hospitalizing plaintiff. In March of 1980 Dr. Vogel recommended that plaintiff permanently avoid activities that required lifting or pushing more than fifty pounds and activities that necessitated bending. Dr. Vogel testified that plaintiff suffered from a 5% physical impairment.
Plaintiff became mentally distressed when his condition began to deteriorate after the first rhizotomy. Dr. Vogel referred him to Dr. Cloyd, a psychiatrist. Dr. Cloyd testified that plaintiff was a perfectionist who had trouble adjusting to the limitations *1023 forced upon him. Dr. Cloyd did not believe plaintiff was a malingerer. He found plaintiff to be suffering from depression because he was unable to be as active as before the accident. Plaintiff was having difficulty with his family owing to his lack of patience and irritability since the accident. Dr. Cloyd described Mr. Faulk’s condition as psychoneurotic depressive reaction, and prescribed anti-depressant as well as anti-anxiety medication. Plaintiff improved with the medication, but Dr. Cloyd testified that he was still depressed, and taking medication for tension, anxiety and to help him sleep, at the time of trial.
A neurosurgeon, Dr. Applebaum, was engaged by the defense, and examined plaintiff for R half hour some two years after the accident. Dr. Applebaum found no muscle spasm, no scoliosis and no impaired range of motion. Dr. Applebaum testified that he did not perform rhizotomies because he did not believe them to be effective. Dr. Applebaum’s opinion was that plaintiff showed no evidence of disability and that there was no physical basis for the pain he was experiencing. He stated that there was no reason Mr. Faulk could not return to work.
Additional testimony was given by plaintiff’s supervisor at the Postal Service. He stated plaintiff had an excellent work history and attendance record prior to the accident. Faulk had not been an employee who complained about physical problems. Mrs. Faulk offered testimony as to the change in her family’s lifestyle since the accident. They were a family who enjoyed doing things together such as fishing, camping and various church functions. Mr. and Mrs. Faulk took pleasure in dancing and frequently chaperoned dances sponsored by their church. Mr. Faulk enjoyed working with electronics; he had built his own television as well as remote control miniature airplanes that he would fly with his son. Unfortunately, Mr. Faulk was unable to participate in most of these activities, and simply did not feel like working on things around the house because of his pain. He also became irritable with his family, as corroborated by Dr. Cloyd’s testimony.
The record clearly establishes that plaintiff was injured in the January 18, 1978 accident, and that he continued to suffer for more than two years following the accident. The only testimony adverse to plaintiff’s claim for damages was that of Dr. Applebaum. Dr. Applebaum’s disbelief in the effectiveness of rhizotomies is in contrast to the testimony of Dr. Vogel and Dr. Russo that plaintiff had shown some improvement.
Plaintiff sought special damages for medical expenses and lost wages. The jury returned a verdict that awarded plaintiff $14,000 in damages. The jury did not specify what portion of the $14,000 was for special or general damages or both, nor did it answer interrogatories. The court of appeal concluded that the jury had chosen to give greater weight to Dr. Applebaum’s testimony than to evidence given by plaintiff’s many witnesses, but was unable to articulate sufficient reasons to allow it to conclude that the jury’s result was clearly wrong.
This court has consistently held that an appellate court should not disturb an award for damages made by a trial court unless the record clearly reveals there was an abuse of the “much discretion” afforded the trier of fact under C.C. 1934(3). See Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971). Here the jury, if indeed it did predicate its verdict on the testimony of Dr. Applebaum, ignoring the testimony of Drs. Russo, Vogel and Cloyd, abused its discretion. Dr. Applebaum’s opinion is important in assessing plaintiff’s condition at the time of trial, but is of little weight in determining his condition prior to that time. All of the physicians who testified agreed a difference exists between objective and subjective indications that a patient may have. Drs. Vogel, Cloyd and Russo found those objective indications during the two years in which they treated plaintiff. The disappearance of objective indications some two years after the accident, when Dr. Ap- *1024 plebaum examined plaintiff, does not establish that Mr. Faulk did not have problems during that period. Nor does it prove that plaintiff did not suffer from subjective indications.
Plaintiff proved he is entitled to special damages for medical expenses and lost wages, and it was an abuse of discretion for the jury to not compensate Mr. Faulk for these expenses. In Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967), the trial judge entered a judgment for plaintiff, but felt her injuries were greatly exaggerated; he also did not believe the testimony of plaintiffs doctor because the physician had given similar whiplash testimony in other cases. The trial judge awarded plaintiff the nominal sum of $250 as compensatory damages, and $150 for medical expenses. This court found the trial judge abused his discretion by not giving credence to the physician’s uncontroverted testimony, and held that an award of $1800 would properly compensate plaintiff for her pain and suffering. The jury abused its discretion by ignoring plaintiff’s uncontroverted proof of these expenses when reaching its verdict, and had no discretion to award more or less than what was proved by the evidence.
In Jordan v. The Travelers Insurance Co., 257 La. 995, 1006-1007, 245 So.2d 151, 155 (1971) we held that:
“One injured through the fault of another is entitled to full indemnification for the damages caused thereby. La.Civil Code Art. 2315. Another general principle deduced therefrom and applicable here may be stated as follows:
Where there is a legal right to recovery but the damages cannot be exactly estimated, the courts have reasonable discretion to assess same based upon all the facts and circumstances of the case. Civil Code Art. 1934(3); Brantley v. Tremont & Gulf Ry. Co., 226 La. 176, 75 So.2d 236 (1954), and decisions therein cited.... ”
Plaintiff’s claim for damages for pain, suffering and disability are more difficult to ascertain. The trial court is indeed granted discretion within the range of reasonableness. Coco v. Winston Industries, Inc., supra at 335, set the proper standard for appellate review of damage awards:
“We do reemphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award. Anderson v. Welding Testing Laboratory, Inc., [La., 304 So.2d 351] supra; Bitoun v. Landry, [La., 302 So.2d 278] supra; Fox v. State Farm Mutual Automobile Insurance Co., [La., 288 So.2d 42] supra, Walker v. Champion, [La., 288 So.2d 44] supra. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court.. .. ”
Application of these principles is made more difficult in this case because there were no reasons for judgment. The jury made a single award of $14,000 for the entire claim, and we can only speculate as to its intention. If the jury’s award reflected an effort to reimburse $14,000 in special damages and nothing more, or to compensate for merely a portion of the special damages, but less than $14,000 worth, our assessment of the evidence in this case is that such a determination was an abuse of discretion. As shown by the testimony of plaintiff and his physicians, Mr. Faulk received real injuries and incurred medical expenses prompted by his condition. He is entitled to special damages for all proven medical expenses amounting to $11,421.14.
The same analysis applies to lost wages. If the award intended to give anything less than $20,338.40 for loss of wages, because of disbelief that plaintiff needed to be absent from work, it was also an abuse of discretion.
Plaintiff is also entitled to general damages for his pain, suffering and physical impairment. The jury was apparently not convinced that plaintiff suffered to the de *1025 gree he contended, and therefore awarded him much less than he sought, even if the entire award had been for general damages. The jury, having the benefit of observing plaintiff, was in a better position to assess the credibility of his testimony regarding the pain he endured. Nevertheless, an award of $14,000 in general damages to someone who was twice hospitalized as a result of his injuries, required two operative procedures for relief of his pain, and could not return to work on a regular, full-time basis for more than two years after the accident is an abuse of discretion. We believe that an award of $35,000 in damages is the lowest amount that could be appropriately awarded.
For these reasons, the award of damages is set aside. The judgment of the court of appeal is hereby amended to increase the award of damages to plaintiff to $31,759.54 for special damages and $35,000.00 in general damages for a total damage award of $66,759.54, plus interest from the date of judicial demand until paid, at defendants’ cost.
LEMMON, J., concurs.
WATSON, J., concurs but would fix minimum general damage at $75,000.00.
BLANCHE and MARCUS, JJ., dissent and assign reasons.

. One judge of the three judge panel concurred, stating that he had “grave doubts” as to the correctness of the result, but that he was un- . able to articulate sufficient reasons to justify changing the judgment below. Another judge dissented, saying the award “shocks my conscience.” Faulk v. Cagle Supply, Inc., 399 So.2d 1186, 1188 (La.App.1981).

. Plaintiff sued Authement, Cagle Supply, Inc., his employer, and Cagle’s liability insurer, State Farm Mutual Automobile Insurance Company.

. Dr. Vogel described a rhizotomy as “an operative procedure where pain nerves are cut with an electrode." The procedure requires general anesthetic, and is an operation like any other operation, according to Dr. Vogel, though it does not require an incision.