449 So.2d 1070 (1984)
Willie POPE, et al.
v.
CITY OF BATON ROUGE.
Harry O. MILLS, Jr. and Ann C. Mills
v.
Willie POPE, et al.
Nos. 83 CA 0572, 83 CA 0573.
Court of Appeal of Louisiana, First Circuit.
April 3, 1984.
*1071 James B. Thompson, Baton Rouge, for Harry O. Mills, Jr. and Ann C. Mills.
Richard Reed, Baton Rouge, for Willie Pope, Gwendolyn S. Pope and Aetna Cas. & Sur. Co.
Caroline Norton, Asst. Parish Atty., Baton Rouge, for City of Baton Rouge.
Before COVINGTON, COLE and SAVOIE, JJ.
COLE, Judge.
The main issue here is whether or not contributory negligence is a defense in this strict liability case. We conclude it is. The facts giving rise to this litigation are as follows.
On April 12, 1978,[1] at approximately 7:30 A.M., Gwendolyn Pope was traveling east on Main Street and Ann Mills was driving her van north on Eugene Street. As Mrs. Mills approached the intersection of the two streets, she noticed the traffic signal was not functioning. She stopped at the intersection and seconds later a car headed west on Main Street also stopped. This car (later identified as the Stevens vehicle) signaled to her to proceed. She looked to her left and saw the approaching Pope car almost *1072 a block away. Judging the speed and distance of the vehicle, Mrs. Mills believed she could cross the intersection before the Pope car reached it.[2] When her car reached the middle of the intersection it was "broadsided" by the Pope auto. Both vehicles suffered rather extensive property damage and Mrs. Mills was injured. The Stevens car was damaged by the Mills van, but that matter is not the subject of this suit.
The car driven by Mrs. Pope and owned by her husband, Willie Pope, was insured by Aetna Casualty and Surety Company. Under the terms of the policy, Aetna paid the following amounts: $3,472.90 for damage to the Pope auto; $65.00 ambulance fee for Mrs. Pope; $932.84 for damages to the Stevens' car; and $4,650.07 for property damage and medical expenses for Mrs. Mills. A conventional subrogation agreement was executed by Aetna and the Popes for the sum expended on the Pope car.
Willie Pope and Aetna filed suit against the City of Baton Rouge, alleging the accident was caused by the City's non-operative traffic signal. Aetna sought to recover the sums it had paid out under the policy and Pope sought to recover his $100 deductible loss. Ann Mills and her husband, Harry Mills, filed suit against Willie Pope, Gwendolyn Pope, Aetna and the City. They alleged the accident was caused by the joint negligence of Mrs. Pope and the City and sought to recover for Mrs. Mills' medical expenses, pain and suffering, permanent disability and loss of income. The suits were consolidated for trial.
The trial court found Gwendolyn Pope negligent and Ann Mills free of negligence. The court found the City liable based on both negligence and strict liability. Judgment was rendered as follows: In the suit by Willie Pope and Aetna against the City, judgment was rendered in favor of Aetna for $9,055.81 (for sums expended under the policy)[3] and in favor of Willie Pope for $100 (the amount of the deductible). In the suit by the Mills against the Popes, Aetna and the City, judgment was rendered in favor of Mrs. Mills and against all defendants for $7,820.00 ($7,500.00 general damages and $320.00 lost wages) and in favor of Mr. Mills for $50.00 (the cost of a medical report). The City filed a suspensive appeal, as did Aetna and the Popes.
There is no dispute on appeal as to the amount of the awards. The Popes and Aetna contend the court erred in finding Mrs. Pope negligent and in failing to find Mrs. Mills negligent. The City also questions the court's findings concerning Mrs. Mills and raises certain legal questions concerning the application of the strict liability theory.
We will first consider the negligence of Mrs. Pope. The trial court found her to be negligent in these aspects:
"[I]n failing to yield the right of way, failing to yield to the vehicle approaching from the right, failing to control her vehicle so as to avoid a collision, failing to see what she should have seen, i.e., vehicles stopping at the intersection, in driving too fast for the road conditions."
We agree with the trial court that Mrs. Pope was negligent, primarily because she did in fact fail to see what she should have seen, i.e., the cars stopped at the intersection and the non-operative light. She testified it was raining the morning of the accident and she was driving at a "moderate speed." She stated she had never been on Main Street before and was not aware of the traffic light until she was "right there up under it." She said she did not notice the Mills vehicle until immediately before the collision and did not notice the Stevens car until after the impact. We conclude a prudent person, driving in rainy conditions on an unfamiliar street, should have been attentive enough to observe the non-operative light, particularly since the Stevens vehicle and the Mills van were both stopped at the intersection. If Mrs. Pope *1073 had noticed the two stopped cars, she would have then questioned the existence of a traffic control device, thus increasing the possibility of its discovery.
We also agree with the trial court's conclusion that Mrs. Pope was driving too fast for the conditions. Although there is no evidence of her exact speed, the fact that her small car (a Mercury Cougar) pushed the Mills vehicle (a large van) some 22 feet across the intersection indicates she was traveling rather fast.
We will next consider the alleged negligence of Mrs. Mills. She testified she noticed the traffic was not "flowing" and then observed the traffic light was "out." She stopped at the intersection, ascertained that the Pope vehicle was a sufficient distance away so as to allow her time to clear the intersection, and proceeded to cross Main Street. Although her judgment about the time factor (based upon her appreciation of speed and distance) proved to be wrong, we find she acted reasonably and therefore will not disturb the trial court's finding of fact as to her culpability.
As to the City's liability, we agree with the trial court the City can be held under theories of either negligence of strict liability.[4] There has been much jurisprudential confusion concerning the difference between these two theories. This matter was clarified in Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982), rehearing denied 1982. The court explained that in the typical negligence context the claimant must prove the owner (of the thing) knew or should have known about the defect or risk-creating condition. In strict liability cases, the claimant need not prove this knowledge; the owner is presumed to have known about the defect and the risks created thereby. The court explained as follows at page 497:
"Thus, while the basis for determining the existence of the duty (to take reasonable steps to prevent injury as a result of the thing's presenting an unreasonable risk of harm) is different in C.C. Art. 2317 strict liability cases and in ordinary negligence cases, the duty which arises is the same." (Emphasis added.)
Therefore, in the present case, it matters not which approach is used in reaching the City's liability. Since a statement was introduced at trial, showing that the City Department of Public Works had been notified of the defective signal at 6:54 A.M. on the morning of the accident, we need not presume the defendant knew of the defect. The City, in fact, had actual knowledge of the dangerous condition yet failed to take the simple remedial step of dispatching a patrolman to the scene. The repairman for that area was busy repairing another signal; he arrived at the intersection at 8:21 A.M. and completed his work by 9:14 A.M. Considering this situation in terms of duty-risk analysis, we conclude the City had a duty to protect motorists from the dangers inherent in a non-operative traffic signal. They breached this duty by failing to immediately send out a patrolman to manually control the intersection. The accident which occurred, an intersectional collision, is precisely the type risk which is easily associated with the City's duty to control the intersection. Therefore, we agree with the trial court the City is liable in this case.
From the Mills' viewpoint, the City and Mrs. Pope are joint tort-feasors. The negligence of the City in not having a manual control at the intersection, and the negligence of Mrs. Pope in driving too fast under the prevailing conditions and not maintaining a proper lookout, were both substantial factors in bringing about the accident and resulting damages to Mr. and Mrs. Mills. Therefore, these parties are liable in solido.
The City argues that on the basis of strict liability, Mrs. Pope's negligence should be a bar to Aetna's and Mr. Pope's recovery. The Kent case did not directly *1074 answer the question of whether or not the same defenses are available to a defendant under the two theories of liability. This question was addressed recently in Buchanan v. Tangipahoa Parish Police Jury, 426 So.2d 720 (La.App. 1st Cir.1983). This court discussed the single difference in negligence cases and strict liability cases, as explained in Kent, and then stated at page 725 as follows:
"Because the ultimate duty which arises under either the strict liability or negligence theory is the same, there is no rational policy basis for precluding contributory negligence as a defense to one and not the other. The conduct of the claimant should be analysed the same in either situation."
See also Dorry v. LaFleur, 399 So.2d 559 (La.1981) and Carpenter v. State Farm Fire and Casualty Co., 411 So.2d 1206 (La.App. 4th Cir.1982), writ denied, 415 So.2d 951 (La.1982).
In our view it is immaterial whether we term the conduct of Mrs. Pope "victim fault" or whether we term it "contributory negligence." The causative fault involved in this case dictates the same result. Semantic refinement of conceptual theories only confuse further an already perplexing jurisprudence. Stability in our law, with its many advantages, validates the use of traditional defenses in tort actions. Weaving an intricate path among defenses perceived to emanate from La.Civ.Code arts. 2315, et seq., is unnecessary. See, e.g., Loescher v. Parr, 324 So.2d 441 (La.1975). A better approach would seem to be the use of the terms fault, force, and fortuitous event as defined by La.Civ.Code art. 3556 (13, 14 and 15).
We conclude Mrs. Pope's negligence does, in fact, bar Aetna's recovery (as an insurer, Aetna "stands in the shoes" of its insured) and therefore reverse that portion of the judgment which allowed Aetna to recover from the City. As to the $100.00 granted to Mr. Pope, we affirm. There is no basis for imputing Mrs. Pope's negligence to her husband. A driver's negligence is not imputed to the owner of the vehicle. Farmer v. Hartford Accident & Indemnity Co., 368 So.2d 487 (La.App. 3d Cir.1979), writ denied, 371 So.2d 618 (La. 1979). Also, a wife's negligence is no longer imputed to her husband because the jurisprudential rule which allowed such imputation has been declared unconstitutional as an unreasonable sex-based discrimination. Lewis v. Till, 395 So.2d 737 (La. 1981). Therefore, Mr. Pope's recovery from the City is not barred.
For these reasons, the judgment of the trial court is reversed insofar as it granted recovery in favor of Aetna against the City. In all other aspects it is affirmed. Costs of this appeal are to be paid by Aetna.
REVERSED IN PART; AFFIRMED IN PART.
SAVOIE, J., concurs in the result.
NOTES
[1] This claim arose prior to the introduction of the concept of comparative negligence in Louisiana. LSA-C.C. art. 2323.
[2] Mrs. Mills also testified at trial that she assumed the Pope car would stop at the intersection, since all other cars were doing so.
[3] The $65.00 ambulance fee paid by Aetna for Mrs. Pope was not allowed.
[4] The City's liability originates under LSA-C.C. art. 2317 in that art. 2317 addresses damage occasioned by a thing in one's custody. To that extent this is termed a "strict liability" case, although we consider the designation a misnomer.