472 So.2d 43 (1985)
Joel TURNER and JoAnne Turner
v.
SAFECO INSURANCE COMPANY OF AMERICA.
No. CA 84 0076.
Court of Appeal of Louisiana, First Circuit.
May 7, 1985.
*44 William C. Shockey, Baton Rouge, for plaintiffs-appellants Joel Turner and JoAnne Turner.
Arthur H. Andrews, Baton Rouge, for defendant-appellee Safeco Ins. Co. of America.
Before LOTTINGER, COLE, CARTER, LANIER and ALFORD, JJ.
COLE, Judge.
This is a suit for damages stemming from personal injuries. The plaintiff, Mr. Joel Turner, sustained a "slip and fall" down a stairway located inside the two-story townhouse apartment he was leasing as his family residence. The apartment was leased from the owner, Mr. Roy Schnebelin. A direct action was filed against Safeco Insurance Company of America, defendant, the general liability insurer of Mr. Schnebelin.
Trial by jury commenced and after the close of plaintiff's case the defendant filed a motion for directed verdict alleging plaintiff failed to prove the cause of the accident was a defect in the stairway. This motion was denied by the trial court. At the conclusion of the trial an award of $17,500 was made in favor of Mr. Turner and against Safeco. Safeco then moved for a judgment notwithstanding the verdict based upon irregularities in the answers given to special interrogatories submitted to the jury. This motion was denied by the trial court. Mr. Turner then filed a motion for additur and, alternatively, for partial new trial based on a claim of gross inadequacy of the verdict rendered by the jury. Both of these motions were denied by the trial court. Mr. Turner appeals from the *45 award of $17,500 claiming it is inadequate. Safeco answers the appeal disclaiming any liability to Mr. Turner.
A verdict was rendered in the same trial in favor of Safeco and against Mrs. Turner, Joel's wife, freeing Safeco from liability for a fall which Mrs. Turner sustained on the same stairway. No timely appeal has been taken from the judgment and therefore it is final.
On the evening of February 17, 1981, Mr. Turner returned home from work. He went upstairs to ready himself for supper. On his descent he slipped near the bottom of the stairway and fell, predominantly on his left side. Lying sprawled on the landing, Mr. Turner began to suffer excruciating pain which radiated from his lower back. He was taken to a hospital where conservative treatment, including traction and pain killers, was administered. Mr. Turner was diagnosed as having sustained a ruptured lumbar disc. Two weeks later a laminectomy was performed by Dr. James Poche to eradicate Mr. Turner's pain. Six weeks of convalescence followed the surgery. An assignment of a twenty per cent functional disability due to the injury and operation was made, by a later attending physician, as to Mr. Turner's permanent physical condition.
The case was submitted to the jury in the form of special interrogatories reading as follows:
"1. Was Mr. Schnebelin the owner of the premises?
2. Was there a defect (vice) in the premises?
3. Did the defect cause Mr. Turner's injuries?
4. Did Mr. Turner assume the risk of the injuries sustained?
5. Was Mr. Turner contributorily negligent in this accident?
6. Was the contributory negligence of Mr. Turner a proximate cause of the damages suffered by him?
7. What was the degree of fault of Mr. Turner expressed in percentage?
8. What is the TOTAL amount of damages sustained by Mr. Turner, expressed in dollars?"
The interrogatories concerning Mrs. Turner were the same as above and the answers concerning Mrs. Turner were considered first. The jury was polled as a whole on interrogatories 1, 2 and 3 and the results were accepted by opposing counsel. The trial court then indicated the answer to interrogatory 3 obviated the necessity to consider further answers by the jury due to the finding by the jury Mrs. Turner's injuries were not caused by the defect. The jury foreman then interjected stating the jury answered that wrong because they went on and "finish (sic) filling out on both of them." The trial court told the jury, "... if the defect didn't cause the injuries then a person can't be awarded any sum of money...." Following this comment, an individual polling, as to whether Mrs. Turner's injuries were caused by the defect, occurred. The original answer to special interrogatory 3 was found to be in conformance with the individual polling.
The jury foreman interrupted requesting, "the jury would like to go back in before you (the court) announce the results of the other (Mr. Turner's action), if it is proper." The court instructed the jury that a polling would take place to determine if there existed a mistake concerning the answers to the special interrogatories in Mr. Turner's action. When the polling of the answer to interrogatory 3 occurred the jury varied from an initial answer of zero/yes, twelve/no, to a subsequent answer of nine/yes, three/no. Thereby causation of injury, by the defect, to Mr. Turner was found by the jury. The court noted the variance by changing and initialing the form.
The court further examined the form and determined a conflict existed between the jury's answer for interrogatory 5 and their answer for interrogatory 7. Interrogatory 5 indicated Mr. Turner was not contributorily negligent by a vote of two/yes, ten/no. However, interrogatory 7 attributed a 50% *46 degree of fault to Mr. Turner.[1] After indicating to the jury that if there was no contributory negligence then no percentage of fault may be attributed to Mr. Turner, the court retired the jury to redeliberate on the apparent conflict. The jury came back and assigned a zero percentage of fault as the answer to interrogatory 7.
Three issues are raised by this sequence of events:
1) whether or not the trial court's comment as to the resolution of the conflict between special interrogatory 3 and special interrogatory 8 requires granting defendant's motion for mistrial;
2) whether or not fault is attributable to the plaintiff in light of the original conflicts in the answers to the special interrogatories and the jury charge that contributory negligence must be a substantial deviation from normal conduct; and
3) whether or not an award of $17,500 for the general and special damages suffered by plaintiff is an abuse of the "much discretion" vested in the trier of fact.

CAUSATION
Defense counsel moved for a mistrial based on his perception the jury changed their votes on special interrogatory 3 simply because they were trying to "give [Mr. Turner] some money."[2] He based this perception on the trial court's comment indicating if no causation is found then no money will be awarded and the consequent vote variance from zero/yes, twelve/no to nine/yes, three/no after a polling. The defendant further contends no evidence has been introduced by plaintiff which can as a matter of law support a finding by this court of causation in the instant case. We find these assignments of error do not constitute a basis for reversing the trial court on the issue of causation.
The trial court noted a conflict existed between the answers to special interrogatories 3 and 8. Special interrogatory 8 is tantamount to a general verdict in favor of plaintiff. See House v. Thompson, 452 So.2d 1195, 1200 (La.App. 1st Cir.1984), writ denied, 457 So.2d 15 (La.1984). A polling was taken to resolve the apparent conflict. Polling is a recognized method to ascertain that all jury votes were counted correctly. McCarter v. Liberty Mut. Ins. Co., 436 So.2d 726 (La.App. 4th Cir.1983), writ denied, 440 So.2d 145 (La.1983). Polling has been further used to determine whether or not a conflict in the answers to special interrogatories and a general verdict were intended by a jury. House, supra. As a result of this polling the jury vote as to causation varied from zero/yes, twelve/no to nine/yes, three/no. Thusly, a finding of causation was entered by the trial court.
The comment by the trial court does not constitute reversible error. It was merely a reiteration of the jury charge in a more comprehensible manner. Conceding for the sake of argument the general verdict is inconsistent with the answer to the special interrogatory[3] (i.e., this court *47 should consider the vote count before the variance by polling), the entire record is before us and it is our duty to render a proper judgment. La.Code Civ.P. art. 2164. See also, Andrepont v. Naquin, 345 So.2d 1216, 1221 (La.App. 1st Cir.1977), and the authority therein cited. Further, the second contention of defendant as to the sufficiency of the evidence will also be considered by this inquiry.
In our view a proper judgment requires we affirm the trial court on the issue of causation. The defendant contends the plaintiff has not shown the exact step on the stairway which caused the fall to occur. Further, the defendant contends the manner in which the defective stairway as a whole caused the fall has not been shown. We deem such a precise showing is not required.
The case of Reynolds v. Texas & P. Ry. Co., 37 La.Ann. 694, 698 (1885), relates the long recognized principle, "... [W]here the [defect] of the defendant greatly multiplies the chances of accident to the plaintiff, and is of a character naturally leading to its occurrence, the mere possibility that it might have happened without the [defect] is not sufficient to break the chain of cause and effect between the [defect] and the injury. Courts, in such matters, consider the natural and ordinary course of events, and do not indulge in fanciful suppositions. The whole tendency of the evidence connects the accident with the [defect]." Accord, Vitanza v. Growth Realties, Inc., 91 A.D.2d 917, 457 N.Y.S.2d 544 (1983). See also, W. Prosser, Torts [3d ed.]§ 41, p. 246; Carter v. City-Parish Government, etc., 423 So.2d 1080 (La.1982); Naquin v. Marquette Casualty Company, 244 La. 569, 153 So.2d 395 (1963).[4]
In the instant case the stairway is clearly defective according to the testimony of an architect, Mr. W.J. Evans. Mr. Turner fell down the stairway. It is the natural consequence that this condition caused the fall, unless another cause can be proven.

CONTRIBUTORY NEGLIGENCE
Our analysis is now focused upon whether another cause for the accident has been shown, specifically the fault of the victim, Mr. Turner. As this court stated in Pope v. City of Baton Rouge, 449 So.2d 1070, 1074 (La.App. 1st Cir.1984), it is immaterial whether we term the conduct of Mr. Turner "victim fault" or whether we term it "contributory negligence." Rather than mystify the term fault we note simply the conduct of Mr. Turner caused partially or helped bring about the accident. If it is helpful to label the concept, the words causative fault would seem to be descriptively accurate. And, if we are to consider the degree of causative fault, civilian discipline requires the use of Civil Code art. 3556(13) which signifies three degrees of faults: the gross, the slight, and the very slight fault. In any event, the use of judicial restraint to curtail the creation of additional *48 confusing theories is advantageous to the bench, bar and public. Justice Blanche, in a recent dissent, demonstrates the goal is attainable. He stated: "It would be a simple matter to apply comparative negligence in all cases where the fault of both parties contributes [to] the injury, whether under Civil Code Article 2315 or Article 2317 or any other conceivable theory of liability." (Underscoring supplied.) See, Bell v. Jet Wheel Blast, Division of Ervin Industries, 462 So.2d 166 (La.1985), a recent supplement to our confusion. Cf. Buchanan v. Tangipahoa Parish Police Jury, 426 So.2d 720 (La.App. 1st Cir.1983).
Prior to the February 17th accident, Mr. Turner had fallen down the stairway. On the night of February 3, 1981, after hearing a strange noise, Mr. Turner was roused from sleep and rushed downstairs anticipating the need to protect his daughter who was asleep downstairs. At the top of the stairway he slipped and tumbled down. No injuries resulted from this occurrence.
Mrs. Turner suffered a fall down the stairway, the circumstances of which were examined by the trial court along with Mr. Turner's claim. Further, a house guest, Mr. Pat Olstene, had stumbled down the stairway during a stay at the residence. He reportedly suffered no injuries attributable to the fall.
We note, therefore, Mr. Turner had knowledge of a series of falls down the defective stairway contained inside his residence. In fact a Mr. Travis Patrick testified merely looking at the stairs revealed they were "really off." With these facts in mind we again note the defense of contributory negligence is available in a strict liability case.[5]Pope, supra. Contributory negligence, being a defense, invokes the comparative negligence provisions of La. Civ.Code art. 2323 to apportion a degree of negligence attributable to Mr. Turner.
When the jury initially answered the special interrogatories pertaining to Mr. Turner's conduct they found no contributory negligence and yet found an attributable fault percentage equal to 50%. After the court allowed the jury to redeliberate, an appropriate practice pursuant to La.Code Civ.P. art. 1812 (as it appeared prior to its amendment by 1983 La. Acts No. 534, § 8), a finding of 0% fault on Mr. Turner's part was returned and entered.
However, in determining whether contributory negligence was present the jury labored under a mistaken assumption. As previously noted, the court charged the jury contributory negligence must be a "substantial deviation." This charge is erroneous. The court in Dorry v. Lafleur, 399 So.2d 559 (La.1981) quotes,
"`Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection.... The standard of conduct to which the plaintiff must conform for his own protection is that of a reasonable man under the circumstances.' Smolinski v. Taulli, 276 So.2d 286, 290 (La.1973)." At page 560, note 1.
This is the proper charge for the trial court to have made to the jury.
It is understandable for this jury to find no contributory negligence and yet assign a percentage of fault because they may have believed Mr. Turner's percentage fault was not "substantial" and therefore did not constitute contributory negligence. Further, as previously discussed, the percentage of fault attributable to the property owner, for whom Safeco is legally responsible, was never determined. Therefore, the necessary compliment by which the jury's thought process may be checked was omitted. This court is certain the jury varied their answer to special interrogatory 3. This indicates a great confusion on the part of this jury. When the jury's answers to the questions are confusing and inconsistent it becomes the duty of this court to *49 review the evidence and render a proper judgment in accordance with applicable law. Andrepont, supra.
The factual basis of Mr. Turner's previous fall, his knowledge of other falls and his daily acquaintance with the stairway in question leads this court to find Mr. Turner 25% at fault in producing his injuries. (Cf. Efferson v. State, Dept. of Transp. & Dev., 463 So.2d 1342 (La.App. 1st Cir.1984), (writs denied March 7, 1985, Nos. 85-C-0087 and 85-C-0155), for the appropriate standard of review to determine attributable percentages of fault.) This percentage will be used to calculate Mr. Turner's award in this case.

QUANTUM
Mr. Turner contends the jury erred by awarding only $17,500 in total damages. The focus of our inquiry must be directed at whether the trier of fact clearly abused its "much discretion" in the award of damages. Reck v. Stevens, 373 So.2d 498 (La. 1979). Absent an initial determination of such an abuse, a reviewing court shall not disturb the trier's award. Wilson v. Magee, 367 So.2d 314 (La.1979).
It was shown Mr. Turner suffered $16,739.31 in special damages. Medical bills totaled $5,946.03 and lost wages totaled $10,793.28. A balance of $760.69 remains as an award for general damages. Obviously when one has to undergo a surgical procedure such as a laminectomy it is clear abuse of discretion to make such a small award for the accompanying pain and suffering. See Monnier v. Boutte, 420 So.2d 725 (La.App. 4th Cir.1982). Also, for methodology employed in increasing lump sum awards, see Palmer v. Stokes, 444 So.2d 213 (La.App. 1st Cir.1983); Dunaway v. Rester Refrigeration Service, Inc., 428 So.2d 1064 (La.App. 1st Cir.1983); and Black v. Ebasco Services, Inc., 411 So.2d 1159 (La.App. 1st Cir.1982).
In particular, Mr. Turner suffered a ruptured lumbar disc. For two weeks he remained subject to traction and the use of pain killers. He then underwent a spinal fusion, technically a laminectomy. After the lengthy operation he underwent a six week recovery period. A back brace was worn sporadically until trial. A 20% functional disability was established by competent medical testimony. Mr. Turner's active lifestyle has become curtailed. The medical testimony indicates a great deal of pain accompanied Mr. Turner's injury.
However, we reject any claim by Mr. Turner for impairment of earning capacity. Damages for loss of earning capacity should be estimated on the injured person's ability to earn money, rather than what he actually earned before or after the injury. And, while his earning capacity at the time of injury is relevant, it is not necessarily determinative of his future ability to earn. Folse v. Fakouri, 371 So.2d 1120, 1123 (La.1979). The brunt of the testimony shows Mr. Turner's physical ability to continue his work at BASF Wyandotte was not diminished to any significant extent. He voluntarily chose a change in work assignment. Additionally, BASF Wyandotte underwent a reduction in their work force. Mr. Turner's employment was included in the segment eliminated. The medical testimony establishes Mr. Turner can resume the work he performed the major part of his working career, that of a retail salesman and supervisor. He has suffered no decrease in his ability to perform such work as a result of the injury. Also, since the jury obviously did not make an award for impairment of earning capacity, it must have concluded plaintiff has no such impairment. We cannot say the jury was clearly wrong. From the evidence it appears plaintiff has essentially the same capacity for employment and earning he had prior to the accident. He has not sustained his burden of proof as to impairment of earning capacity.
As regards an award for general damages the reviewing court may increase an insufficient award only to the lowest amount that could be appropriately awarded. Faulk v. Cagle Supply, Inc., 412 So.2d 1020 (La.1982). A review of similar injuries in other cases suggests strongly *50 Mr. Turner suffered general damages in the minimum range of $50,000. Compare Monnier, supra, with Hennigan v. Vernon Parish Police Jury, 415 So.2d 584 (La.App. 3d Cir.1982).
We calculate Mr. Turner's award in the following manner: general damages ($50,000) plus special damages ($16,739.31) divided by the percentage fault of Mr. Turner (25%) equals the total award ($50,054.48). For the foregoing reasons the judgment of the trial court is amended to increase the award to Mr. Turner from $17,500 to $50,054.48, and in all other respects the judgment is affirmed. The costs of this appeal are assessed to Safeco Insurance Company of America.
AMENDED AND, AS AMENDED, AFFIRMED.
LANIER, J., dissents and assigns reasons.
CARTER, J., dissents for reasons assigned by LANIER, J.
CARTER and LANIER, Judges, dissenting.
LANIER, Judge.
We do not agree that this case should be decided on the record before us. A view of the witnesses is essential to a fair resolution of the evidence and, thus, the case should be remanded for a new trial by jury.
In Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707, 708 (La.1980), the Louisiana Supreme Court stated:
Where a finding of fact is interdicted because of some legal error implicit in the fact finding process or when a mistake of law forecloses any finding of fact, and where the record is otherwise complete, the appellate court should, if it can, render judgment on the record.
This is not to say, and Gonzales [Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975)] should not be read to require, that the appellate court must find its own facts in every such case. There are cases where the weight of the evidence is so nearly equal that a firsthand view of witnesses is essential to a fair resolution of the issues. The appellate court must itself decide whether the record is such that the court can fairly find a preponderance of the evidence from the cold record. Where a view of the witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded for a new trial.
[Underscoring added].
CAUSATION
The weight of the evidence on the issue of the causal nexus between Mr. Turner's fall and the defect in the stairs is so nearly equal that a firsthand view of the witnesses is essential to a fair resolution of the issue. Such a determination cannot properly be made from the cold record in this case.
This suit involves claims by Mrs. Turner and Mr. Turner for damages incurred when each fell on the defective stairs. The jury found no causation in Mrs. Turner's case. The original jury verdict, in Mr. Turner's case, showed a vote that there was no causation, but awarded him $17,500 in damages. However, the jury was polled and voted 9-3 that there was a causal connection between the fall and the defect. This is the minimum vote which can support a jury finding of fact in a civil case. La.C. C.P. art. 1797(B). Even though both Mr. and Mrs. Turner were using the same stairs with the same frequency, the jury found causation in Mr. Turner's case and no causation in Mrs. Turner's case. In this posture, it is hard to visualize how the factual issue of causation could be a closer call.

CONTRIBUTORY NEGLIGENCE
The jury also had conflicting answers to interrogatories on the issue of contributory negligence. By a vote of 10-2, the jury found Mr. Turner was not contributorily negligent, but also determined his degree of fault was 50%. After further deliberation, the degree of fault was changed to 0%. The majority correctly finds the *51 charge given by the trial court to the jury on contributory negligence is erroneous. The majority then determines that the factual findings of the jury on this issue are manifestly erroneous (clearly wrong) and assigns a 25% degree of fault to Mr. Turner's conduct.
Although we believe the majority is correct in finding Mr. Turner was contributorily negligent (and this is a viable defense in the case), we also believe a view of the witnesses is essential under the facts of this case to properly assess the degree of fault. An architect's drawing of the defective stairs (filed in evidence as Exhibit P-11, a copy of which is attached hereto as Appendix A) shows the height between stairs varied from 7 inches to 10 inches and the width of the stairs varied from 10¼ inches to 13 inches. Prior to Mr. Turner's accident, he had used the stairs for a substantial period of time and had previously fallen on them. Further, Mr. Turner was aware his wife had also fallen, a friend had fallen and his twelve year old son had fallen several times. Despite this knowledge, Mr. Turner did not investigate the stairs, he did not warn anyone about them, nor did he report the problem to his lessor. He continued using the stairs after all of these falls. These facts suggest Mr. Turner's degree of fault is greater than 25%.

QUANTUM
The jury awarded Mr. Turner $17,500, representing $5,946.03 for medical expenses, $10,793.28 for lost wages and $760.69 for general damages. The majority correctly finds the award for general damages is an abuse of discretion.
The elements claimed by Mr. Turner for the general damage award are (1) pain, suffering and mental anguish, past and future, and (2) impairment of earning capacity. We agree with the majority that the record shows Mr. Turner had a ruptured lumbar disc, he had a laminectomy and spinal fusion and he now has a 20% functional disability of his body. We also agree that Mr. Turner is capable of doing the work he was doing prior to the accident. However, the evidence shows Mr. Turner is no longer capable of doing work that involves heavy lifting and, thus, is now deprived of the capacity to earn from that type of labor. This loss of ability to earn (doing work involving heavy lifting) is a compensable element of damages. Folse v. Fakouri, 371 So.2d 1120 (La.1979); Dunaway v. Rester Refrigeration Service, Inc., 428 So.2d 1064 (La.App. 1st Cir.1983), writ denied, 433 So.2d 1056, 1057 (La.1983). The majority is in error in not making an award for this loss.
Fixing the amount of a damage award is a question of discretion. La.C.C. art. 1934; Reck v. Stevens, 373 So.2d 498 (La. 1979). However, to exercise that discretion a factual finding of the extent and/or degree of injury must first be made. Mr. Turner claims damages for past and future pain, suffering and mental anguish. To determine what amount he should get for this portion of his damage claim requires a factual finding about how much pain, suffering and mental anguish he has experienced and will experience. This factual determination is based on objective and subjective evidence furnished by Mr. Turner, his friends and family and his doctors. The jury's verdict indicates it did not place much weight on the evidence presented at the first trial on this issue and the jury saw and heard the witnesses. We believe, under the particular facts and circumstances of this case, it is essential to see and hear the witnesses to determine the facts upon which this discretionary quantum award will rest.

ACTION OF COUNSEL FOR THE PARTIES
After the polling of the jury on the answers to the interrogatories on Mr. Turner's claim (during which the vote on causation was changed), the jury was again retired to deliberate the conflicting answers on the contributory negligence interrogatories. At this time, counsel for Safeco made a motion for a mistrial, which was denied. After the jury was discharged, the following occurred:

*52 Mr. Shockey [counsel for Mr. Turner]: Your Honor, I have a motion.
The Court: All right. I think that Mr. Shockey said he had a motion.
Mr. Shockey: Yes, Sir. The same motion as Mr. Andrews. A mistrial, basically because of all the jury confusion, and I'm not sure we still got what the jury meant to give us or what they meant not to give us, and I'm not sure we understand them and that they understand us. And, we have got a lot of confusion here and I've got questions as to whether the verdict form is reliable, and the verdict form, not only thatI mean the verdict itself, including the polling.
This motion was also denied.
Both counsel for the parties in the reargument before the five judge panel herein told this court that in their opinion the fairest thing to do in this case was to remand for a new trial by jury.

RECAPITULATION
We believe the cumulative effect of the following factors requires a remand for a new trial by jury:
(1) conflicting answers to interrogatories on the issues of causation and contributory negligence;
(2) conflicting findings on causation between Mr. Turner's case and that of Mrs. Turner;
(3) minimum authorized vote finding causal nexus;
(4) the evidence on causation is extremely close and a view of the witnesses is essential to correctly decide the issue;
(5) the jury's factual finding on contributory negligence is manifestly erroneous (clearly wrong);
(6) the jury charge on contributory negligence was erroneous;
(7) a view of the witnesses is essential to determine the degree of fault to assign to Mr. Turner;
(8) the jury award for general damages is an abuse of discretion;
(9) a view of the witnesses is essential to determine the extent and degree of Mr. Turner's past and future pain, suffering and mental anguish;
(10) both sides asked for mistrials based on jury confusion; and
(11) both sides feel the fairest thing to do in this case is to remand for a new jury trial.
In the factual posture of this case, the failure to remand for a new trial will deprive the parties of meaningful factual determinations by an informed jury and, in effect, will deprive them of their statutory right to a trial by jury. (If these circumstances do not justify a remand, what would?)
We respectfully dissent.
*53 
NOTES
[1] It is noted the trial court charged the jury contributory negligence "constituted a substantial deviation from the conduct that we would normally expect of a reasonably prudent person." (Emphasis added.) An objection to this charge was made at the proper moment by defense counsel.
[2] It is pointed out in the defendant's brief a strange coincidence exists between the verdict of $17,500, the amount of past special damages shown at trial ($16,739.31), and the fact Mr. Turner was not covered by insurance for this loss.
[3] La.Code Civ.P. art. 1811 B (as it appeared prior to its amendment and reinstitution as La. Code Civ.P. art. 1812 C by 1983 La.Acts, No. 534, § 8) stated in pertinent part,

"B. In cases to recover damages for injury, death or loss, the court shall submit to the jury special written questions inquiring as to:
1. Whether a party from whom damages are claimed, or the person for whom such party is legally responsible, was at fault, and, if so:
(a) Whether such fault was a proximate cause of the damages, and, if so:
(b) The degree of such fault, expressed in percentage;"
(Underscoring added.)
The special interrogatories submitted by the trial court excluded an inquiry concerning the underscored question. In light of 1983 Acts, No. 534, § 8, changing the word shall to the word may and the inclusion of a permissible waiver of interrogatories, the omission of such an interrogatory should constitute error. The error is sufficient to mandate a broader review by this court of the assignment of fault to the parties than ordinarily permitted by the manifest error standard. The legislature by such a change necessarily indicated the word shall required mandatory inquiry into the assignment of fault to all parties to the suit or it would not have modified the language contained within the statute. The inquiry into comparative fault of the parties reveals a complimentary nature, i.e., that percentages of fault allocated to the parties must always equal 100%. An omission of any party's percentage of fault precludes the availability of an insight into the thought process of a jury. When an omission occurs, addition can not be employed to ensure whether jury instructions were properly understood and administered. Cf. Lemire v. New Orleans Public Service, Inc., 458 So.2d 1308 (La.1984), wherein it was held that while La.Code Civ.P. art. 1812 C provides the court may (unless waived by all parties) submit special written questions to the jury, the apparent intent is that the court in such circumstances is required to submit the questions. From this interpretation we discern the importance placed upon the underscored question by our highest court.
[4] The court in Entrevia v. Hood, 427 So.2d 1146, 1149 (La.1983), implicitly notes the similarity of the judicial process to be employed to discern whether causation is present in both strict liability and the traditional negligence problem.
[5] We deem it unnecessary to address the applicability of La.Civ.Code art. 2322, vis a vis, art. 2695, as regards the basis upon which this cause of action is premised, or as regards contended differences in the standard of proof of causation. Under either approach, our result would be the same.