523 So.2d 935 (1988)
Lloyd GRIFFIN
v.
Charles FOTI, in His Capacity as Criminal Sheriff of Orleans Parish, and Southern American Insurance Company.
No. CA-8858.
Court of Appeal of Louisiana, Fourth Circuit.
April 12, 1988.
As Corrected on Denial of Rehearing May 11, 1988.
*937 Michael J. Laughlin, Stassi, Rausch & Giordano, New Orleans, for appellants.
Gary W. Bizal, New Orleans, for appellee.
Okla Jones, II, City Atty., Don J. Hernandez, Chief Deputy City Atty., Reginald J. Laurent, Asst. City Atty., New Orleans, for appellant/City of New Orleans.
Before GULOTTA, C.J., and CIACCIO, and LOBRANO, JJ.
LOBRANO, Judge.
In this slip and fall case, the City of New Orleans (City), Criminal Sheriff Charles Foti (Foti) and his insurer, Southern American Insurance Co. (Southern) appeal the judgment in favor of plaintiff, Lloyd Griffin, a prisoner in Orleans Parish Prison.
On May 2, 1984 Griffin was an inmate in Orleans Parish Prison confined to the medical tier. On that date, as he prepared to take a shower, he slipped and fell in water standing outside the shower wall in the adjacent living area. The evidence shows that the water seeped through a ½ inch gap in the shower wall unto the floor, which was tile and had no mats or other floor covering. The shower wall was constructed of sheet metal resting on a cinderblock wall. The gap exists where the sheet metal and cinderblock adjoin.
As a result of his fall, Griffin hit his face on the wall and was knocked unconscious. One tooth was knocked out, and another two were loosened to the point that they were subsequently removed. After examination by medical Corpsman, a cervical collar was placed around his neck. He was transferred to Charity Hospital for x-rays and tests, and remained there seven or eight days. In November of 1984 he was transported to Angola, and placed on light duty status. He was returned to Charity in 1985 where x-rays indicated a fracture of the C-2 and C-3 levels, along with degenerative bone changes. In September of 1986 he was transferred to the Washington Correctional Facilities where he remains on light duty status.
The trial court awarded Griffin $41,500.00 for his injuries. The Court found that the proximate cause of the accident was the wet condition of the floor and that both defendants were negligent in failing
*938 "... to use ordinary care and diligence to maintain a reasonably safe condition with respect to the building...."
The City appeals asserting they are not responsible either under negligence or strict liability. Foti appeals asserting that Griffin failed in his burden of proof, specifically attacking his credibility. Both defendants argue the excessiveness of the award, as well as Griffin's own negligence. Southern argues it was error for the trial court to render it liable since plaintiff did not prove coverage.
We reverse the City's liability and that portion of the judgment rendering Southern liable. We affirm as to Foti, but reduce the award by 50% for plaintiff's own fault.
CITY OF NEW ORLEANS
a) Negligence
In order to establish the City's negligence, the evidence must show the City had a duty to maintain the living area inside the prison. This question necessarily requires a review of the respective statutory obligations of a local governing authority with respect to local prison facilities.
La.R.S. 33:1435 provides in part: "[e]ach sheriff shall be the keeper of the public jail...." See also, La.R.S. 15:704; La.R.S. 33:4715 provides that the police jury of each parish shall provide a good and sufficient court house and jail, and R.S. 15:702 requires that the governing authority shall be responsible for the physical maintenance of all jails.
The City argues that the legislative scheme of the various statutes suggests that a local governing authority's obligation is one of satisfying the expenses of housing prisoners, while the sheriff has the duty of operating the facility. In support thereof, they cite Amiss v. Dumas, 411 So.2d 1137 (La.App. 1st Cir.1982).
In Amiss, our brethren of the First Circuit were called upon to decide the respective obligations of the local government and sheriff in housing prisoners. We agree with their analysis, and in particular, the following interpretation:
"The general scheme which we gather from a reading of all of the statutes is that the City-Parish is responsible for the expenses of establishing, maintaining and operating the jail and for all the expenses of feeding, clothing, and providing medical treatment to the prisoners while the sheriff has the duty of operating the jail and seeing to it that the prisoners are properly cared for, fed and clothed." Id. at 1141. (emphasis added)
The above interpretation is reasonable in view of the unique duties of the sheriff in maintaining proper security in the prison, and his responsibility in protecting the public. It would be unreasonable to require the local governing body to maintain its own personnel inside the prison walls subject to its authority where, by law, the sheriff is responsible for the prison.
In this particular case, the only evidence suggesting a duty on the City's part is their stipulation that they own the building. There is no evidence that they have ever inspected, maintained or provided personnel inside the prison walls. We therefore conclude that there is no duty on the City to provide the actual daily maintenance of the interior of the prison. Therefore, we find no negligence.
b) Articles 2317 and 2322
Griffin argues the City is also responsible under the above two codal articles on a strict liability basis. Although the trial court clearly found responsibility on a negligence theory, we nevertheless address this argument also.
Article 2317 and its interpretative jurisprudence require a plaintiff to prove: (1) that the thing which caused damages was in the care, custody and control of the defendant; (2) that the thing had a vice or a defect which created an unreasonable risk of harm, and (3) that the injuries were caused by the defect. Loescher v. Parr, 324 So.2d 441 (La.1975).
Article 2322 provides:
"The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair *939 it, or when it is the result of a vice in its original construction."
The underlying basis of the fault established by each article is the legal relationship between the defective thing and its owner or custodian. Entrevia v. Hood, 427 So.2d 1146 (La.1983); Loescher v. Parr, supra. In explaining this concept of fault, the Entrevia court stated:
"When harm results from the conduct or defect of a person or thing which creates an unreasonable risk of harm to others, a person legally responsible under these code articles for the supervision, care or guardianship of the person or thing may be held liable for the damage thus caused, despite the fact that no personal negligent act or inattention on the former's part is proved." Entrevia, supra at 1148.
It is clear from our previous discussion that the City does not have either the custody or control of the parish prison. That obligation is the responsibility of the sheriff. We have concluded that the City's obligation is to fund the maintenance costs. Therefore at the time of this accident, because the city did not have custody or control of the building Article 2317 is not applicable.
Article 2322, however, poses a different problem. That article does not distinguish between an owner in possession or custody, and one who is not. The city is the owner of Parish prison. However, the statutory scheme discussed earlier, and the evidence clearly show that the Sheriff is the custodian and possessor. But, equally true is Louisiana jurisprudence which makes it clear that an owner's duty under Article 2322 is nondelegable. Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1978).[1] Both parties argue their own interpretation of "ruin" as being dispositive of the issue in their favor.
In Fonseca v. Marlin Marine, 410 So.2d 674 (La.1981) our Supreme Court noted the varying interpretations of "ruin", from a literal actual fall or collapse, to the broad construction of allowing recovery for defects in component parts. The difficulty in these varying interpretations was noted earlier by this court in Leaber v. Jolley Elevator Corp., 354 So.2d 746 (La.App. 4th Cir.1978), writs refused 356 So.2d 1004, 1010 (La.1978), wherein we stated:
"While it is difficult to harmonize the liberal interpretation given to the word `ruin' in the Adamson case [Adamson v. Westinghouse Electric Corporation, 236 So.2d 556 (La.App. 4th Cir.1970)] with the stricter interpretation given in the Davis case [Davis v. Royal Globe Insurance Companies, 257 La. 523, 242 So.2d 839 (La.1970)], we have concluded that the failure of the elevator in the instant case is within the stricter definition of the word `ruin'." Id. at 749.

After review of the numerous cases involving the liberal interpretation of "ruin", we conclude that the Article 2322 responsibility imposed on owners in those cases actually evolves from their status either as a custodian (Article 2317) or a lessor (Article 2695), as well as an owner. That is, where the owner is also in possession of his building, or is the lessor of the building, liability results under either Article 2317 or 2695, as well as Article 2322. See, for example, Lyons v. Parish of Jefferson, 425 So.2d 955 (La.App. 4th Cir.1983), writs denied 430 So.2d 97 (La.1983), where liability was found under both 2317 and 2322 for a faulty electrical box; Inseco v. Cambridge Mutual Fire Ins. Co., 447 So.2d 606 (La. App. 3rd Cir.1984), writs denied 449 So.2d 1349, 1350 (La.1984), where defective wiring resulted in 2317 and 2322 responsibility; Wexler v. Occhipinti, 378 So.2d 1073 (La.App. 4th Cir.1980), where a leaking air-conditioner resulted in 2322 and 2695 liability; Leaber v. Jolley Elevator Corp., supra, where the defective elevator resulted in 2317 and 2322 liability; Fonseca v. Marlin Marine Corp. supra, where the court discussed 2322 liability but ultimately found 2317 applicable.
*940 In the case before us, the City, although the owner, does not possess or have custody of its building, nor is it a lessor in the legal sense. We believe the strict versus liberal interpretation of "ruin" in Article 2322 is related to whether the owner has possession, quasi possession, custody or control of his building. Our belief is supported by Planiol's observation that French jurisprudence originally held an owner responsible under Article 1386 (French code) only if he was proved to be at fault. That burden was eliminated in subsequent jurisprudence, however, by involving par. 1 of Article 1384, the source of La.Code Article 2317. Planiol, Traite Elementare De Droit Civil, Vol. 2, Sec. 931(1) (La.Law Institute English Translation, 1959). Planiol's suggested reason for this is "... normally the guardian of the thing is the owner; consequently, if an accident happens, the presumption of fault established by this article (French Code 1384) is used against him." Id.
It is reasonable to conclude, therefore, that a strict interpretation of the "ruin" in Article 2322 is proper where the owner is neither the lessor, nor has any control over his building. That is, "[t]he `ruin' contemplated by this Article has reference to the actual fall or collapse of a building or one of its components." Davis v. Royal Globe Insurance Co., supra. Under the facts of this case, we hold that the leaking shower stall is not a "ruin" and therefore the City, as owner, is not responsible.
CRIMINAL SHERIFF
The evidence clearly supports the Sheriff's liability either under a negligence theory or Article 2317. Although Foti argues Griffin's lack of proof, and especially his lack of credibility, we find no trial court error.
Foti argues that Griffin's credibility is suspect because of his previous felony convictions, inconsistent statements, his failure to call a fellow inmate who supposedly witnessed the accident, and the fact Griffin was in the detoxification unit for cocaine and valium abuse.
First, credibility is well within the trial judge's discretion. He made particular reference in his reasons that he believed the plaintiff. Griffin's narcotic abuse occurred in September of 1983. He remained in the Detox unit for nine days and was transferred back to Parish Prison seven months prior to the accident. There is no evidence to indicate he was suffering any withdrawal at the time of the accident.
Second, the witness which Griffin failed to call was another inmate, equally accessible to the defendants in this matter. They did not call him either. Although an adverse presumption does exist when a witness is available to a party and he fails to call him, the presumption is rebuttable and should not apply when the witness is equally available to the opposing party. Comeaux v. Cameron Offshore Services, Inc., 420 So.2d 1209 (La.App. 3rd Cir.1982); Crandall v. Scott, 350 So.2d 922 (La.App. 4th Cir.1977).
Third, there is sufficient evidence in the record, particularly Foti's own logs, to support the conclusion that the shower was leaking water into the living area. The log shows that on April 26, 1984, at 7:20 a.m., a deputy went into the tier to see about the leaking shower. On May 2, 1984 at 7:25 a.m., the deputies were notified that the tier was flooding from the shower and that a plumber was needed. At 7:55 a.m. two other deputies checked on the flooding from the shower. At 7:58 a.m., a plumber spent two minutes looking at the shower. There is nothing in the log, or in the record to indicate that any repairs were made on the shower before Griffin fell.
The Criminal Sheriff has the custody and possession of the Parish Prison, and particularly the area where plaintiff fell. The shower was defective because of the one-half inch spacing which allowed water to seep through. Although we hold it is not a ruinous condition for purposes of Article 2322, it certainly is a defective thing for purposes of Article 2317.
Furthermore, the evidence is clear that Foti knew or should have known of *941 the dangerous condition and failed to take protective measures. He has a duty to protect those in his care from a foreseeable risk such as presented in this case. He is therefore also responsible under a negligence theory.
Southern argues Griffin failed to prove it was Foti's insurer. We agree. There is no evidence of coverage. No testimony was elicited, nor was any policy introduced in evidence. The burden was on Griffin once Southern denied his allegation of coverage. Barber v. Best, 394 So.2d 779 (La.App. 4th Cir.1981). Southern's participation in the defense at trial is inconclusive proof that they are the liability insurer of Foti. Leonardi v. Dress Rack, 444 So. 2d 780 (La.App. 4th Cir.1984).
COMPARATIVE NEGLIGENCE/ASSUMPTION OF THE RISK
Foti argues that Griffin assumed the risk of his injury, or was negligent in that he knew the existence of the water on the floor.
In cases of this type assumption of the risk is no longer a viable defense. Murray v. Ramada Inns, Inc., 521 So.2d 1123 (La. Sup.Ct.1988). Comparative fault, however, is proper defense whether liability is based on negligence or Article 2317. Murray v. Ramada Inns, supra; See Also, Howard v. Allstate Insurance Company, 520 So.2d 715 (La.Sup.Ct.1988).
Our review of the evidence shows Griffin was partly at fault in causing his injuries. His testimony clearly shows that he was well aware of the leaking shower wall from the time of his incarceration in the medical tier until the time of his accident, approximately seven months. He testified that numerous complaints had been made to the deputies; that an attempt to seal the gap with masking tape had failed and that he was aware a plumber had inspected the area the morning of May 2, 1984. He also acknowledged that the showers were used constantly, and that he was aware that they were in use immediately prior to his fall.
We conclude that Griffin knew of the dangerous condition of the floor and could have taken the simple precaution of avoiding the wet area. We determine his comparative fault to be 50%.
DAMAGES
Both defendants argue the award is excessive. Plaintiff sustained the loss of three front teeth as well as neck and back injuries. The court awarded a total of $41,500.00 for those injuries.
The x-rays taken immediately after Griffin's fall show possible fracture at the C-4, C-5 level, along with moderate degenerative changes at C-6, C-7. After being transported to Angola, Griffin made various return visits to Charity. The records of those visits indicate a definite fracture at the C-3 level, and moderate spurring. A myelogram in May of 1985 showed questionable minimal disc herniation at C-3, C-4 level, and central disc bulging in the L-4, L-5 and L-5, S-1 area.
The medical records from Angola and Washington Correctional Facility both indicate Griffin was placed on light duty status because of his persistent neck and back complaints. He wore a cervical collar until at least July of 1985. In his oral reasons for judgment, the trial judge summarized Griffin's injuries as follows:
"... the record is repleted [sic] with neck and back complaints by Mr. Lloyd Griffin and treatment at various institutions including Charity Hospital and Angola Penitentiary and I guess that is Washington Correctional Institution from the date of accident May 2nd, 1984. I might add to this date the testimony of Mr. Griffin's doctor, Dr. Nguyen, a staff physician at Angola, who examined the plaintiff, I believe it was on five different occasions testified with respect to his findings of neck injuries that were consistent with the complaints of the plaintiff and the aforesaid medical record. The complaints being identified as neck compression and fracture of the second or third cervical vertebra. I think the medical records will spell that out. Dr. Hung also testified that the plaintiff's fall on or about May 2nd, 1984 occurred and the fracture was more likely than *942 not attributable to the fall. Also objective findings of the degenerative changes in the plaintiff's neck according to Dr. Hung is reflected in the medical records. And [they] further indicates [sic] spurring a year or so later than the accident, which more likely than not confirms that the plaintiff had the spurs after the fracture and that the spurring was caused by the fracture and the trauma. The history of chronic neck pain and the compression of the neck from the date of the accident to the present time and the fact that the plaintiff is suffering from a degenerative neck resulted in Dr. Hung's opinion in a degenerative neck condition for the balance of plaintiff's live [sic] and limitation of his activities in relation to the pain while incarcerate [sic]. Dr. Hung testified that plaintiff was limited to indoor activities. Additionally, Dr. Hung testified as to the credibility of the plaintiff's complaints and that he had real complaints consistent with the trauma and the fracture.
Dr. Hung further testified that the degenerative neck condition will not improve. Prior to May 2nd, 1984 there being no serious or severe injuries to the plaintiff. Dr. Hung testified that more likely than not the plaintiff's complaints were related to the accident in question and the initial trauma of May 2nd, 1984."
We find no abuse of discretion in the award of damages.
Although defendant argues that causation was not proved, we disagree. A review of Dr. Hung's opinion, and the evidence of the fall by Griffin, support the trial court's conclusion that it is more probable than not that Griffin's injuries were caused by the trauma of May 2, 1984. We find no abuse of discretion in the damage award.
DECREE:
For the reasons assigned, we reverse the judgment against Southern Insurance Co. and the City of New Orleans. We affirm the award against the Criminal Sheriff for the Parish of Orleans, but reduce same by 50%, the percentage of plaintiff's own fault.
REVERSED IN PART, AMENDED IN PART, AND AS AMENDED, AFFIRMED.
NOTES
[1] In a lessor-lessee situation there may be a contractual shift of this responsibility. La.R.S. 9:3221.