# STATE OF LOUISIANA
# COURT OF APPEAL
# FIRST CIRCUIT

## 2021 CA 1317

## CHERYL FAYE JACKSON

## VERSUS

## ST. MARY PARISH GOVERNMENT

Judgment rendered: __AUG 1 0 2022__

\* \* \* \* \*

On Appeal from the
Sixteenth Judicial District Court
In and for the Parish of St. Mary
State of Louisiana
No. 125,250 – Division "C"

The Honorable Vincent J. Borne, Judge Presiding

\* \* \* \* \*

Joslyn R. Alex
Breaux Bridge, Louisiana
Alicia Johnson Butler
Jo Ann Nixon
New Iberia, Louisiana

Attorneys for Plaintiff/Appellant
Cheryl Faye Jackson


David M. Thorguson
Morgan City, Louisiana

Attorney for Defendant/Appellee
St. Mary Parish Government

\* \* \* \* \*

**BEFORE: GUIDRY, HOLDRIDGE, AND CHUTZ, JJ.**

Guidry, J., Concurs.

**HOLDRIDGE, J.**

The plaintiff appeals from the judgment granting the defendant's motion for summary judgment and dismissing her suit with prejudice. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

On October 5, 2012, Cheryl Faye Jackson, an employee of the St. Mary Parish Sheriff (the Sheriff), filed suit against the St. Mary Parish Government (the Parish) seeking personal injury damages arising out of an incident on October 9, 2011, at the St. Mary Parish Correctional Center (the Jail).[1] According to Ms. Jackson's petition, the incident injuring her occurred when she was trying to help other deputies stop a fleeing inmate. She told the control booth operator for a gate at the Jail to open the gate. As Ms. Jackson was going through the gate, it closed on her, pinning her. Ms. Jackson was stuck in the gate for five to ten minutes before it was opened.

In her petition, Ms. Jackson alleged that the Parish owned the building housing the Jail and was therefore responsible for maintaining safe conditions on the premises. The Jail was on the seventh floor of the St. Mary Parish courthouse (the Courthouse). According to Ms. Jackson's petition, the Parish was responsible for the hazardous condition of the gate in negligence and/or strict liability. More specifically, Ms. Jackson alleged that the accident resulted from the Parish's fault and/or negligence in allowing a hazardous condition to exist, in failing to warn of the hazardous condition, in failing to properly maintain the premises, and in failing to provide the proper equipment to the tenants. She alleged that the Parish should have had cameras, mirrors, monitoring devices, or a sensor that would open the gate

---

[1] Although the petition spells Ms. Jackson's first name as "Cherly," the correct spelling is "Cheryl" as shown by her in forma pauperis affidavit. Additionally, Ms. Jackson alleged in her petition that she was employed by the "St. Mary Parish Correctional Center" ("the Jail"), but she was actually employed by the St. Mary Parish Sheriff and working at the Jail.

2

if someone was caught in it. Ms. Jackson also alleged that the Parish should have had actual or constructive notice of the defective condition of the gate.

The Parish answered the petition, denying all of the allegations, but admitting that it owned the Courthouse. On March 22, 2021, the Parish filed a motion for summary judgment supported by an affidavit. In its motion, the Parish contended that, while it was responsible for the expenses of operating the Jail and maintaining the prisoners, the Sheriff had the duty of actually operating the Jail and caring for the prisoners, and therefore, it was not liable for Ms. Jackson's injuries.

After a continuance of the hearing on the summary judgment motion at Ms. Jackson's request, she filed her opposition to the summary judgment motion on June 28, 2021, with the Parish's answers to her interrogatories attached to her memorandum. Prior to the summary judgment hearing, Ms. Jackson filed a motion and order to amend her petition on June 28, 2021, and the court granted leave to amend it on June 29, 2021. In her amending petition, Ms. Jackson alleged that the Parish was responsible for the maintenance and repair of the condition of the Jail, including the gates. She alleged that the Parish had knowledge that the cameras in the jail were not working and that the mirrors were not in place to allow the operator to monitor the gate. She alleged the Parish was aware of the need for the operator to have a clear view of the gate and that it had a statutory responsibility to maintain and make any repairs needed for the daily operation of the Jail. Ms. Jackson also filed her affidavit in the record.

The court held a hearing on the motion for summary judgment on July 9, 2021. The court signed a judgment granting the motion for summary judgment and dismissing Ms. Jackson's petition with prejudice on July 19, 2021. Ms. Jackson appeals from the judgment.

3

## DISCUSSION

### Summary Judgment

Appellate courts review the granting of summary judgment *de novo* using the same criteria governing the trial court's consideration of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. See La. C.C.P. art. 966(A)(3); **Turner v. Rabalais**, 2017-0741 (La. App. 1 Cir. 12/21/17), 240 So.3d 251, 255, writ denied, 2018-0123 (La. 3/9/18), 237 So.3d 1193.

The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. La. C.C.P. art. 966(A)(2). The purpose of a motion for summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. **Hines v. Garrett**, 2004-0806 (La. 6/25/04), 876 So.2d 764, 769 *(per curiam)*. After an adequate opportunity for discovery, summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4).

On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion, the mover's burden on the motion does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, after meeting its initial burden of showing that there are no genuine issues of material fact, the mover may point out to the court that there is an absence of

4

factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, summary judgment shall be granted unless the adverse party can produce factual evidence sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).

The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider. See La. C.C.P. art. 966(D)(2).

## Negligence and Strict Liability

In her assignment of error, Ms. Jackson argues that the trial court erred in granting the Parish's motion for summary judgment. In its oral reasons for judgment, the trial court stated that the Parish was the owner of the building, but its obligation was to provide the facility to the Sheriff who operated it. The court then concluded that there was no genuine issue of material fact and that Ms. Jackson did not present any proof that the Parish failed to maintain the building under La. R.S. 15:702, that it had any knowledge of a defect under La. R.S. 9:2800, or that it failed to provide a good and sufficient jail under La. R.S. 15:304 and 33:4715.

5

In its motion for summary judgment, the Parish initially relied on La. R.S. 33:4715[2] and La. R.S. 15:304[3] to support its contention that it was not liable because it only had the duty to pay the expenses of operating the Jail and maintaining the prisoners, whereas the Sheriff had the duty of actually operating the Jail and caring for the prisoners, citing **Amiss v. Dumas**, 411 So.2d 1137, 1141 (La. App. 1 Cir. 1982), writ denied, 415 So.2d 940 (La. 1982).

This court in **Amiss** was reviewing a declaratory judgment action filed by the sheriff against the City-Parish Council for the City of Baton Rouge and the Mayor-President for the Parish of East Baton Rouge for a definition of the duties and obligations of his office and that of the city parish council as to the operation of the parish prison. 411 So.2d at 1139. In **Amiss**, after considering several statutes, including La. R.S. 33:4715, 15:304, and 15:702, this court determined that the responsibility for providing a jail in each parish rests with the police jury of that

---

[2] Louisiana Revised Statutes 33:4715 states:

> **The police jury of each parish shall provide a good and sufficient court-house,** with rooms for jurors, and **a good and sufficient jail**, at such place as they may deem most convenient for the parish at large, provided that when the seat of justice is established by law, they shall not have power to remove it.

(Emphasis added.)

[3] Louisiana Revised Statutes 15:304 states, in pertinent part:

> **All expenses incurred in the different parishes of the state** or in the city of New Orleans **by the** arrest, **confinement,** and prosecution **of persons accused or convicted of crimes, their removal to prison,** the pay of witnesses specifically provided for by law, jurors and all prosecutorial expenses whatever attending criminal proceedings **shall be paid by the respective parishes in which the offense charged may have been committed** or by the city of New Orleans, as the case may be. The expenses shall be paid by the parish treasurer or by the city of New Orleans after an account of the expenses shall be duly certified to be correct by the presiding judge and the clerk of court. The fees, salaries, and expenses to be paid shall be fixed and regulated by the parish or city authority unless otherwise provided by law; ...

(Emphasis added.)

6

parish, or, as in the case of East Baton Rouge, the City-Parish Council. 411 So.2d at 1140-41. This court explained the statutory responsibilities as follows:

> The general scheme which we gather from a reading of all of the statutes is that the City-Parish is responsible for the expenses of establishing, maintaining and operating the jail and for all the expenses of feeding, clothing, and providing medical treatment to the prisoners while the sheriff has the duty of operating the jail and seeing to it that the prisoners are properly cared for, fed and clothed.

> . . .

> La. R.S. 15:702[4] places the responsibility for the physical maintenance of all parish jails and prisons upon the governing authority of each parish. No distinction is made therein between major and minor repairs, major and minor appliances, the general responsibility of the parish governing authority to maintain the prison and the supplies necessary for daily routine maintenance. This statute, along with La.R.S. 33:4715, which requires that the governing authority provide a "good and sufficient jail", mandates that the parish governing authority is responsible for establishing and maintaining the parish prison which includes all equipment and supplies necessary for the establishment and proper maintenance of the jail.

Amiss, 411 So.2d at 1141. (Footnote added.)

In addition to its reliance on the statutes and the Amiss case concerning its statutory obligations, the Parish in support of its motion for summary judgment contended that it was not negligent because it complied with its statutory obligation to fund the Jail and it had no duty to operate or maintain it, even as the owner of the building where the Jail was located, citing **Griffin v. Foti**, 523 So.2d 935 (La. App.

---

[4] Louisiana Revised Statutes 15:702 provides:

> **The governing authority of each parish shall be responsible for the physical maintenance of all parish jails** and prisons. In those parishes in which the governing authority operates the parish jail the governing authority shall pass all bylaws and regulations they may deem expedient for the police and good government of the jails and prisons being operated by the parish governing authority.

(Emphasis added.)

We also note that the court in Amiss referred to La. R.S. 15:704, which states, in pertinent part, "Each sheriff shall be the keeper of the public jail of his parish, ..." 411 So.2d at 1140.

7

4 Cir. 1988), writ denied, 531 So.2d 272 (La. 1988). In **Griffin**, an inmate in Orleans Parish Prison slipped and fell in water standing outside the shower wall due to a gap in the shower wall. In affirming the district court's dismissal of the inmate's negligence claims against the City of New Orleans after trial on the merits, the Fourth Circuit stated that to establish the City's negligence, the evidence must show that it had a duty to maintain the living area inside the prison. After reviewing La. R.S. 33:1435, 33:4715, 15:702, and **Amiss**, the court stated,

> In this particular case, the only evidence suggesting a duty on the City's part is their stipulation that they own the building. There is no evidence that they have ever inspected, maintained or provided personnel inside the prison walls. We therefore conclude that there is no duty on the City to provide the actual daily maintenance of the interior of the prison. Therefore, we find no negligence."

**Griffin**, 523 So.2d at 938.

The Parish also contended in its motion that Ms. Jackson could not establish factual support for the elements of her strict liability claim. Louisiana Revised Statutes 9:2800(A) provides, "A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody."

Louisiana Civil Code article 2317 provides:

> We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.

Louisiana Civil Code article 2322 provides:

> The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

Louisiana Revised Statutes 9:2800(C) states:

> Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.

Constructive notice shall mean the existence of facts which infer actual knowledge. La. R.S. 9:2800(D).

In this case, we must determine whether the Parish met its burden on its motion for summary judgment of demonstrating that it complied with its statutory obligations regarding the Jail. See La. C.C.P. art. 966(D)(1). If there is a genuine issue of material fact as to the Parish's liability, then it is not entitled to summary judgment dismissing Ms. Jackson's suit.

## Summary Judgment Evidence

In conducting our de novo review of the motion for summary judgment, we will review the evidence submitted in support of and in opposition to the motion for summary judgment.[5] In support of its motion for summary judgment, the Parish attached the affidavit of Henry C. LaGrange, the Chief Administrative Officer of the

---

[5] The Parish's counsel at the summary judgment hearing "offer[ed] and submit[ed] everything that's been submitted on both sides in connection with the hearing...." After hearing argument, the court stated, "I think the offerings – for purposes of the record, I think [the Parish's counsel] offered the entire record and all [Ms. Jackson's] are in that offering." Ms. Jackson's counsel noted that Ms. Jackson's affidavit was submitted in opposition to the summary judgment motion. No objections were made to any of the documents submitted in support of or in opposition to the summary judgment motion. We note that no documents or evidence in support of or in opposition to a motion for summary judgment should be introduced at the hearing. See La. C.C.P. art. 966(B).

While we will consider all documents submitted by either party without objection in our review of the motion for summary judgment, the unsworn or unverified documents submitted by the parties in support of and in opposition to the motion for summary judgment have no evidentiary value. See **Cryer v. Tangi Pines Nursing Ctr.**, 2017-0697 (La. App. 1 Cir. 12/21/17), 240 So.3d 975, 979. A document that is not an affidavit or sworn to in any way, or is not certified or attached to an affidavit, has no evidentiary value on a motion for summary judgment. **Unifund CCR Partners v. Perkins**, 2012-1851 (La. App. 1 Cir. 9/25/13), 134 So.3d 626, 632. Unsworn or unverified documents, such as letters or reports, annexed to motions for summary judgment or to the opposition to such motions are not self-proving and will not be considered, if objected to. Attaching such documents to a motion for summary judgment or the opposition thereto does not

9

Parish, Mr. LaGrange stated that as the Chief Administrative Officer, he had personal knowledge of the expenses paid by the Parish for establishing and maintaining the Parish jail facilities and of the expenses paid by the Parish for feeding, clothing, transporting, and providing medical care to the prisoners housed in the Parish jail facilities. Mr. LaGrange stated that in 2011, the Parish maintained two jails, one of which was a 120-bed facility located on the seventh floor of the Courthouse in Franklin, Louisiana. According to Mr. LaGrange, all of the individuals who worked at the parish jails were employed by the St. Mary Parish sheriff. Mr. LaGrange stated that the Parish adopted annual budgets for the expenses required to operate and maintain the jails and to feed, clothe, transport, and provide medical care to the prisoners housed in the jails. Mr. LaGrange concluded his affidavit with the statement that from January 2011 through December 2011, the Parish paid approximately $1,402,777 to fund the operations and maintenance of the Parish jails and to feed, clothe, transport, and provide medical care to prisoners housed in the Parish jails.

Ms. Jackson filed her opposition to the summary judgment motion with the Parish's answers to her interrogatories attached to her memorandum. Among its responses, the Parish stated that no Parish employees were present or worked in the Jail when the incident happened and that all gate operators were employees of the Sheriff. The Parish stated that the gate operators were hired and trained by the Sheriff. The Parish also stated that the gate was installed in the Jail during renovations which occurred from 2000 to 2002. The Parish stated "Routine

transform them into competent summary judgment evidence. See **Bunge North America, Inc. v. Board of Commerce & Industry and Louisiana Dept. of Economic Development**, 2007-1746 (La. App. 1 Cir. 5/2/08), 991 So.2d 511, 527, writ denied, 2008-1594 (La. 11/21/08), 996 So.2d 1106.

10

maintenance of the gate is performed by Parish employees. Dennis Rivette is the Building Maintenance Supervisor...." Additionally, the Parish stated that "There are no scheduled inspections of the gate. Routine maintenance is performed by Parish employees." Lastly, the Parish responded, "Scheduled inspections of the gate are not performed. Additionally, the Parish does not maintain any documents when it performs routine maintenance." When asked if an injury involving the gate had ever occurred before and whether there had been any reports made indicating that the gate's design might be defective, the Parish responded negatively. The Parish also stated that the gate operator was located twenty feet from the gate and the operator's line of sight depended upon how and where he was physically situated. The Parish stated that no inmate had been injured by any gate in the facility.

Also attached to the Parish's answers to Ms. Jackson's interrogatories were two documents entitled, "ST MARY PARISH JAIL INCIDENT REPORT." One report was written by Ms. Jackson on October 9, 2011, describing the incident. The other report was written by Deputy Connie Green on October 9, 2011, wherein she stated, "I [opened] the gate for [Ms. Jackson] to go [assist two other employees with an inmate].... I ... closed the gate and [Ms. Jackson] hadn't went through it and stated her back was hurting [due] to the gate closing on her." We note that these incident reports were unsworn and unverified and therefore have no evidentiary value. See footnote 5.

Ms. Jackson also filed her affidavit in the record on June 28, 2021. She described the incident and stated that she observed after the accident that the gate operator had no way to see her in the gate. Ms. Jackson said, "[Ms. Green] told me she was sorry and explained that she did not see me and she couldn't see me, or hear me trapped in the gate." She stated that:

a few days after the incident the employees from [the Parish] came to [the Jail] to observe the mechanism of the gate and placed a pillow in the gate to see if the door would retract. ... [E]ven though the pillow was in the gate it still closed crushing the pillow in the same manner that it crushed me.

Ms. Jackson stated in her affidavit that during the entire time she worked at the jail, which was four years, no maintenance of the gate was done or scheduled. She also stated that the cameras in the area near the gate were not operating.

Upon examining all of the evidence on the motion for summary judgment, we conclude that, while the Parish owns the Jail, and the gate as a part of the Jail, the Parish met its burden of proving that it paid the expenses of operating the Jail. While the Parish's answers to Ms. Jackson's interrogatories indicate that it did perform routine maintenance of the gate, Ms. Jackson did not establish a ruinous condition of the Jail or gate in question. According to the discovery responses Ms. Jackson submitted, at the time of the incident, there were no parish employees working at the Jail as it was operated exclusively by the Sheriff. Because operating the jails was exclusively the province of the Sheriff, there was no evidence submitted by Ms. Jackson that the Sheriff requested and that the Parish failed to install cameras, sensors, or mirrors if they were needed. Moreover, Ms. Jackson put forth no evidence to show that the Parish had knowledge about any defects or unreasonably dangerous conditions in the gate (if any existed) before the incident. Therefore, Ms. Jackson did not satisfy her burden and the trial court did not err in granting the Parish's motion for summary judgment.

**Additional Discovery**

On appeal, Ms. Jackson contends that the court should not have granted the motion for summary judgment because she needed more time to complete discovery. Louisiana Code of Civil Procedure article 966 requires that parties have "an opportunity for adequate discovery" before summary judgment is granted. The

12

requirement is that adequate discovery be *conducted*, not that discovery be *completed.* **Law Offices of Lehman v. Rogers**, 2021-0682 (La. App. 1 Cir. 12/22/21), ___ So.3d ___, ___ (2021 WL 6071600, *3). There is no absolute right to delay a motion for summary judgment until discovery is complete. **Preston v. Southern University Through Board of Supervisors of Southern University Agricultural and Mechanical College**, 2020-0035 (La. App. 1 Cir. 7/13/21), 328 So.3d 1194, 1203. The trial court has broad discretion when regulating pre-trial discovery, which will not be disturbed on appeal absent a clear showing of abuse. It is within the trial court's discretion to render a summary judgment or require further discovery. **Campbell v. Dolgencorp, LLC**, 2019-0036 (La. App. 1 Cir. 1/9/20), 294 So.3d 522, 527.

In this case, the incident occurred on October 9, 2011; suit was filed on October 5, 2012; the motion for summary judgment was filed on March 22, 2021 and initially set for hearing on May 11, 2021; and pursuant to Ms. Jackson's motion for continuance filed on April 26, 2021, the hearing was continued until July 9, 2021. While Ms. Jackson asserted that outstanding discovery existed in her opposition memorandum, she did not request a continuance at the hearing on the summary judgment motion.[6] Given that the incident occurred nine years before the summary judgment motion was filed, Ms. Jackson clearly had an opportunity for adequate discovery before the motion for summary judgment was granted, and the trial court did not abuse its discretion in rendering summary judgment rather than requiring further discovery.

---

[6] Also attached to Ms. Jackson's opposition memorandum was a letter dated May 31, 2019, from the Parish's counsel to her counsel stating that he would like to schedule Ms. Jackson's deposition over the next several weeks. The Parish's counsel also stated that he understood Ms. Jackson's counsel would like to take at least one deposition of a Parish employee. He added that he was available for depositions during the weeks of July 15 and July 22, and asked for her to let him know her availability. We note that the record does not contain any depositions and further note that this unsworn and unverified letter has no evidentiary value. See footnote 5.

**CONCLUSION**

For the foregoing reasons, the July 19, 2021 judgment of the trial court granting the motion for summary judgment filed by St. Mary Parish Government and dismissing the suit filed by Cheryl Faye Jackson with prejudice is affirmed. All costs are assessed to Cheryl Jackson.

**AFFIRMED.**